STATE *v.* JOSEPH ROE.

CHITTENDEN.
*January,*
1840.

All the counts in an indictment must be disposed of before judgment.

A *nolle prosequi* may be permitted by the court, at any time before judgment.

Material testimony of no witness can be excluded from the jury unless the witness is interested in the event of the suit or has been convicted of an infamous crime. Improper conduct in the witness, suppressions or alterations in his testimony, cannot take his testimony from the jury. They go to his credit and that rests-with the jury.

It is no error in the court to neglect to charge a jury on all or any of the approved rules of law as to weighing circumstantial testimony. That is a matter in the discretion of the court and no error is committed unless they give instructions which may mislead.

In an indictment for burning a public building, it is unnecessary to allege who is its owner or occupant, and any such allegation, if made, is immaterial.

THIS was an indictment for arson, in two counts, as follows :—

" *State of Vermont,* ⎰ Be it remembered that at the county
" *Chittenden County.* ⎱ court, begun and holden at Burling-
" ton within and for the county of Chittenden, on the last
" Tuesday of August, A.D. 1839 ;—The grand jurors with-
" in and for the body of the county of Chittenden aforesaid,
" now here in court duly empannelled and sworn upon their
" oaths present, that Joseph Roe of Burlington aforesaid, on
" the 23d day of June, A.D. 1839, with force and arms, at
" Burlington aforesaid, a certain meeting house, then and
" there situated, belonging to the first Calvinistic congrega-
" tional society in Burlington aforesaid, erected for public
" use, to wit: for the public worship of Almighty God, did
" then and there wilfully, maliciously and feloniously set
" fire to and burn, contrary to the form, force and effect of
" the statute in such case made and provided, and against
" the peace and dignity of the state. '

" And the grand jurors aforesaid, now here in court duly
" empannelled and sworn as aforesaid, upon their oaths fur-
" ther present, that the said Joseph Roe, on the 23d day of
" June, A.D. 1839, with force and arms at Burlington afore-
" said, a certain meeting house then and there situated, called
" and known by the name of the white church, a building
" erected for public use, to wit, for the public worship of
" Almighty God, did then and there wilfully, maliciously and

CHITTENDEN, " feloniously burn, contrary to the form, force and effect of
January, " the statute in such case made and provided and against
1840.
" the peace and dignity of the state."

State
v.
Roe          Plea, not guilty.

Upon the trial in the county court, evidence was given to the jury tending to prove, on the part of the state, that a little before *three o'clock*, A. M., on the morning of the 23d day of June, 1839, the meeting house in said Burlington, usually known and designated as the *white church*, was discovered to be on fire in the belfry and was consumed by fire, and that, just before the fire was discovered, the bell of the white church was heard to ring from fifteen to twenty strokes. On the cross-examination of the witnesses, the respondent's counsel proposed to prove that on the same morning after the white church was burnt, the bell of the brick church was rung, that the bell was *set*, as it is called, and then allowed to fall and ring of its own weight without any interference of the bellman and that the ringing in both cases was alike and stated that the object of this testimony was to show, from the similarity in the manner of ringing, that the white church bell was rung accidentally ; but this, being objected to on the part of the state, was excluded by the court.

To prove the formation and existence of the society, as charged in the first count in the indictment, the prosecutor offered in evidence an original paper, dated January 10, 1810, purporting to be articles of association, signed by upwards of seventy inhabitants of said Burlington, in which paper the subscribers thereto set forth the object of such association, as follows ;

" We believe it a duty, reasonable in itself, that men, as
" moral agents, made capable of social acts and relations,
" should adopt religious principles and form themselves into
" societies for the support of the gospel, and in order to a-
" void those schisms, which frequently arise in societies,
" founded on what the world calls liberal principles, we view
" it of importance that every religious society should estab-
" lish, as a basis or foundation of their belief and mode of
" discipline, a system of religion.

" Therefore, we hereby voluntarily form ourselves into a
" congregational society, under the calvinistic order and dis-

" cipline, hereby covenanting to each other that we will, so
" far as our abilities will permit, support a preached gospel
" in said town of Burlington, and that we will, at all times,
" cultivate that harmony, friendship and brotherly love
" which the benevolent principles of our religion dictate."
Said articles contained provisions for holding the first meet-
ing, appointment of officers, &c.

CHITTENDEN,
January,
1840.

State
v.
Roe.

The prosecutor also offered parol testimony tending to
prove, that, immediately after the organization of the society,
it took the name of *the first Calvinistic Congregational
Society in the town of Burlington ;* that it had ever since
done its business in that name, made contracts and commen-
ced suits, and been known and recognized by that name
and still is. ' This evidence was objected to on the part of
the respondent. But the objection was overruled and the
evidence was admitted by the court.

The prosecutor offered, as a witness, one Silas Spear,
and proposed to prove that after the burning of the Catholic
church in Burlington, in May 1838, the witness was in com-
pany with the respondent and one Francis Roe, a cousin of
the respondent, and that they made threats that other build-
ings or churches would be burnt in consequence of the
Catholic church having been burnt by the yankees, as they
said. The counsel for the respondent objected to their giving in
evidence the threats and declarations of Francis Roe and the
court decided that the declarations and threats of Francis Roe
were not evidence against Joseph Roe except so far as he
was present and participating in them and that to that extent
they were admissible. The witness, having been sworn, tes-
tified that Joseph Roe and his cousin Francis Roe were in
company with the witness, and that in a conversation with
them about burning the catholic church the witness said to
them that he thought the catholic church was burnt by their
own people and that Joseph Roe said he thought not,
and that Francis used threatening language and said
the yankees would pay two for one for that. Joseph
said nothing on that subject and made no reply to it.

To prove that the respondent was at the meeting house
yard and near the meeting house just before the alarm of
fire and about the same time, Mrs. Hibbard was introduced
as a witness, who testified that she lived about twelve rods east
of the turn-stile on the north side of the church yard, that on

CHITTENDEN,
January,
1840.

State
v.
Roe.

the morning of the 23d June last, at about three o'clock, she heard, as she thought, a faint cry of fire, and that she looked out of a chamber window on the north side of the house and saw a man coming from the direction of the turn-stile in the church yard, and thought he passed through it, and that he passed easterly under her window; that she had known the respondent for several years before, and that from his size and walk, she thought it to be the respondent, though she did not think of it at the time he passed. She also described the walk of the respondent as being somewhat peculiar and described it as a strait forward gliding walk, and that the walk and appearance of the person who passed under her window were the same which she knows the respondent to have. She also testified that she thought the person she saw had on dark pantaloons, light vest and she thought a dark coat or round about, though of this the witness was less confident.

John J. Scott was introduced on the part of the prosecution and testified, among other things, that on the morning of the 23d June last, being the same night on which the white church was burnt, he had occasion to be up at night on account of illness and that, just before two o'clock in the morning, two men passed his house, and that he was at the side of the fence as they passed, that one called the other Joe; that he had been acquainted with the respondent for some years and thinks that one of them was the respondent, and that they had some conversation which excited his suspicion, a little, that all was not right, and he followed after them, as they passed on easterly by his house, and that they stopped against the pottery near the brick church; that they went from there and he followed them to the corner by Mrs. Wadsworth's, near the white church which was burnt, when they separated, and that Joseph went south and entered the meeting house yard on the west side and the other man entered the yard on the north side and they then came together and stood in front of the meeting house and soon separated and one went either into the meeting house or around it, and the other passed off from the meeting house towards Mr. Seymour's shop, which shop stood some ten rods north east of said meeting house. On cross-examination, the witness admitted that he had testified in this cause before

the court of enquiry, and omitted all that part of his present testimony giving an account of the respondent and the other person, after they left the pottery, and, on inquiry by the prosecutor for the reason of this omission, he stated that he had been threatened and was afraid of personal injury and violence.

The prosecutor, to sustain the testimony of this witness, offered several witnesses to prove that his general character for truth and veracity was good, which was objected to by the counsel for the respondent, but the objection was over-ruled and the testimony admitted, and several witnesses testified to that effect.

Mrs. Hibbard and John J. Scott were the only witnesses who testified that they saw the respondent near the church or-meeting house, about the time the alarm of fire was given, but it did appear, from his own confession, that he passed up pearl street before the alarm was given, and was opposite Judge Foote's, which is on a hill, distant half a mile from the meeting house, on his way home, when he discovered the house to be on fire. It also appeared, on the trial, that the church yard was frequented by foot passengers as they had occasion to pass across it and in that direction.

Parol testimony was given, on the part of the prosecution, tending to prove the organization of the society, in 1810, under the articles of association; that records were kept and that said meeting house was erected by the society for the public worship of Almighty God, and that it had, at all times thereafter, been under the control and direction of the society, acting in the name of the first Calvinistic congregational society in the town of Burlington, and that the interest in the house was in the pew-holders.

The court, among other things, charged the jury, that their first enquiry would be whether there had been a felonious burning of this house by the hand of an incendiary, and that, of this, they must be satisfied, beyond a reasonable doubt; that the law did not require this to be made out by positive and direct testimony, as contended for by the counsel for the respondent, but that this, like any other fact, might be proved by circumstantial evidence alone, provided it was satisfactory and convinced them of the fact, beyond a reasonable doubt.

On the subject of circumstantial evidence, the respondent contended, that, assuming all the circumstances in the case to be true, still, he might be innocent. But, the jury were told, by the court, that no general definition could be given of what circumstances amounted to satisfactory evidence of the guilt of the accused, but that each case must depend upon its own circumstances; that absolute, mathematical, certainty was not required, but that their consciences and understanding must be satisfied, and there must be a moral certainty, to the exclusion of every reasonable doubt; that they were not to acquit the prisoner on slight and fanciful conjectures; that this would be a dereliction of duty, which they were sworn to perform, but that it was their duty to give the whole evidence in the case a full and impartial consideration, and that it was not their duty to convict the prisoner unless the evidence in the case excluded from their minds all reasonable doubt as to his guilt.

On the subject of the testimony of Silas Spear, the respondent contended that it ought to be rejected entirely. But the court charged the jury that it was not their duty to give the declarations of Francis Roe any effect against the prisoner, unless he was present and participated in them, and that, to the extent of his participation, they would be evidence against him, and no further.

The counsel for the prisoner asked the court to charge the jury, in regard to the testimony of Mrs. Hibbard, that it was too slight to be regarded by them; but the court instructed the jury that her evidence was pertinent and to be weighed by them in connection with the other evidence in the case.

In relation to the testimony of John J. Scott, the counsel for the respondent insisted, that, if it was admissible at all, it was entitled to the lowest degree of credit and that he was to be regarded by the jury as a man capable of committing perjury, and that his testimony was not to be regarded at all, unless supported by other evidence. On this point the court charged the jury, that the evidence of Scott was to be received and weighed in the case; but that if he had, knowingly, on a previous examination of this case, omitted any material fact, it should detract very greatly indeed from his credit, and that the question of his credit was finally with

them, and that, in weighing his testimony, they had a right to take into the account his appearance on the stand, the testimony that had been given in court in regard to his charac- ter, and how far he was corroborated by other witnesses, and, under all the circumstances of the case, give it such weight as they thought it deserved.

The jury were further charged, that if they found, from the evidence, that the association which was formed in 1810 into a *congregational society under the calvinistic order and discipline,* took to themselves the name of the first Calvintic congregational society in the town of Burlington, and did their business in that name and was known and recognized by that name, and built, owned and occupied the said meeting house, as a house of public worship, up to and at the time of its being consumed, as a society under that name, there was no variance between the evidence and the first count in the indictment, notwithstanding they should find that the several pews belonged to the respective pew-holders; and if they found these facts, and were satisfied, beyond a reasonable doubt, that the prisoner at the bar was knowingly and intentionally guilty of setting fire to and burning the said house, as the government had attempted to prove, they might return the prisoner guilty upon the first count in the indictment, and, in that event, they would have no occasion to pass upon the second count. But if, on the other hand, they should not be satisfied from the evidence that the society, after their organization in 1810, took to themselves the name of the first Calvinistic congregational society in the town of Burlington, and did their business in that name and was known and recognized by that name, and erected, owned and occupied the said meeting house as a house of public worship up to and at the time it was burnt, as a society under that name, they might, if they found the facts in the second count in the indictment proved to their satisfaction, return a verdict of guilty under that count ; but if, from a careful examination of the whole evidence in the case, they were not satisfied, beyond a reasonable doubt, of the guilt of the respondent, they would return a verdict of acquital.

The jury returned a verdict of guilty upon the first count in the indictment.

The respondent, moved the court below for a judgment

of acquital on the whole indictment, notwithstanding the ver-
dict, "because the general charge, as collected from the
" whole indictment, is, that the respondent feloniously burn-
" ed *a meeting house in Burlington, erected for public use,*
" and the jury having found that he was not guilty of the
" charge, in its most general terms, he cannot be adjudged
" guilty of the same burning by reason of a more specific al-
" legation.

The respondent also moved in arrest of judgment for the
insufficiency of the first count in the indictment.

The county court decided that the respondent should take
nothing by his motions.

To the foregoing decisions and charge of the court the re-
spondent excepted.

*Hyde & Peck and C. Adams,* for respondent.

1. It was incumbent on the state to prove that the church
was set on fire by design, and that the respondent was the
criminal agent. The evidence showing that the ringing of
the church bell, just before the fire was discovered, tended
to show some person in the church about the time the fire
must have originated, and the evidence that the respondent
passed in the vicinity of the church, soon after, tended to
show that the person in the church was the respondent. The
evidence offered, on cross-examination, by respondent, that
the bell had been left set up (as the practice is) and turned
by its own weight, and thus the ringing was accidental, ought
not to have been rejected, as it tended to reconcile the ring-
ing of the bell with the accidental burning of the church,
and also tended to rebut the presumption of the presence of
the respondent.

2. The testimony of Silas Spear should have been exclud-
ed, or the jury instructed to lay it out of the case. The case
shows that the respondent said nothing objectionable, and
the declarations of Francis Roe are not admissible without
first showing a community of design to carry out the crimi-
nal purpose, and then only such as accompany and give
character to the act. 2 Stark. Ev. 53. The rule that de-
clarations made in the presence of a party and not denied are
admissible against him, is limited. When such declarations
affect the rights or implicate the conduct of the party, and
the truth or falsity of which he is supposed to know, so that

he has a strong inducement to deny them, if untrue, they may, in civil suits, be admissible, but not otherwise. *Vail* v. *Strong*, 10 Vt. R. 457. In criminal cases the rule is more strict. The declarations must be direct and explicit, and come from the respondent himself. *Rex* v. *Appleby*, 14 Com. L. R. 153. *Rex* v. *Telicote*, 3 Com. L. R. 442. As the declarations of Francis Roe were made to a third person, without any allusion to the respondent, he was not called on for a reply and cannot be prejudiced by his silence. A direct threat of the prisoner, when proved, is but circumstantial evidence, and that too of a slight character. *Bullock* v. *Beach*, 3 Vt. R. 73. It is a principle of presumptive evidence, that every circumstance must be clearly and expressly proved. A circumstance cannot be proved by circumstances, nor can a circumstance be built upon a presumption. Swift's Ev. 137. 2 Burr. 1072. 1 Stark. Ev. 501. The jury were left to infer the respondent's assent from his silence and his guilt from his assent. The court erred in charging the jury that the respondent was bound by such declarations, to the extent of his participation, when there was no evidence tending to show any participation, on his part, whatever, but directly the contrary. *Birney* v. *Martin*, et al. 3 Vt. R. 236.

3. The court erred in charging the jury that Scott's " credit was finally with them." When a jury find, from the admission of a witness on the stand, that he has committed perjury, in relation to the same matter, they ought to reject his testimony. An oath is the legal test of truth and the credit due to testimony rests on the presumption that men, on oath, will declare the truth. Whatever destroys this presumption destroys the testimony. Other crimes, when attributed to a witness, raise only a presumption that he may not regard his oath, but when *perjury is shown*, the fact itself appears. It may be said that a conviction is the only evidence of guilt. But the cases, on this point, are, where there was a record of conviction, or where the witness refused to declare his own infamy, or where other evidence was rejected for the reason that a witness is not bound to come prepared to defend against particular acts; but when the witness admits the fact, none of these reasons apply. Titus

CHITTENDEN,
January,
1840.

State
v.
Roe.

Oates' case, 4 St. Tr. 47. Elizabeth Cummings' case, 10 do. 390.

But, if not rejected entirely, as matter of law, the jury have not an uncontrolled discretion over the testimony. It cannot be credited, unless supported by other witnesses, or if any credit is to be given to it, it is the lowest degree. This differs from the case where the general integrity of the witness is shaken. The very fact appearing that the witness is capable of perjury the presumption that he declares the truth ceases. "*Falsum in uno falsum in omnibus.*" 1 Stark. Ev. 524. *Dunlap* v. *Patterson,* 5 Cowen's R. 243. *Allen* v. *Young,* 6 Monroe, 136, cited in Gra. N. Trials.

4. Evidence of the good character of Scott was improperly admitted. The rule that general character must be attacked before evidence is admissable to support it, is too well settled to require authority. This rule is admitted in *Stephenson* v. *Walker,* 4 Esp. R. 50, in which case evidence was not admitted in support of the character of witnesses in court, but in support of the character of attesting witnesses who were dead, and to whom fraud had been imputed by another of the subscribing witnesses, so that the credit due to the attestation rested, not upon the oath, but solely on the character of the deceased witnesses. In the celebrated case of Jolliff's will, (1 W. Bl. R. 365,) nothing is decided but that the party calling the attesting witnesses may disprove facts to which they testify ; but if evidence of character was introduced, as stated by Lord Kenyon, in *Stephenson* v. *Walker,* the case shows that the witness, who drew the will and had given his deposition, was dead. These cases are put expressly on the ground that fraud being imputed and the witnesses being dead, the jury, not having the witnesses before them, had not the ordinary means of judging of their character. 1 Phil. Ev. 232. *Bishop of Durham* v. *Beaumont.* 1 Camp. R. 207. In *Rex* v. *Clarke,* 3 Com. L. R. 333, the evidence was confined to character acquired after the commission of the larceny by the witness. The principle contended for was directly decided in *Russell* v. *Coffin,* 8 Pick. R. 143, and in *Rogers* v. *Moore,* 10 Conn. R. 13. In the former case, Parker, Ch. J., says it never was decided otherwise. If a witness knowingly swear to two contradictory stories, at different times, supporting his character adds

no weight to his testimony, as it adds as much to one relation as to the other, and contraries cannot be true. "*Allegans contraria non est audiendus.*" Gilb. Ev. 287.

5. The paper offered in proof of the existence of the society was inadmissible, as the name therein given to the society is not the same as that in the indictment. The society having taken a name by the articles of association cannot change it, at least without a vote of the society. The record was the best evidence of the name under which the society transacted its business. The words, " the town of," in the name, as proved by parol, being omitted in the indictment, there is a variance. 3 Stark. Ev. 1577. 2 B. & P. 281. Str. R. 787. 2 B. & Al. 756. 2 Car. & P. 474. 2 Russ. on Cr. 707.

6. The court erred in not charging the jury, as requested, upon the rules of the presumptive evidence, that, however numerous and strong the circumstances tending to indicate guilt, they avail nothing unless the *corpus delicti* be first fully and clearly established; that every circumstance relied on must be clearly established by direct proof, and to the same extent as if the whole issue rested on such circumstances; that a circumstance cannot be proved by circumstances; that a presumption cannot be built on a presumption. These rules are binding on courts and jurors, and experience has shown their necessity. 1 Stark. Ev. 501, 481. Swift's Ev. 137. 2 Burr. 1072. *People* v. *Hennessey*, 15 Wend. R. 147.

7. The court erred in telling the jury that the organization of the society was proved, when it should have been left to them to find the fact, and also in instructing them that if they found " these facts," (before detailed in the charge,) entirely omitting to notice the organization of the society, to find a verdict against the prisoner. The legal existence of the society is essential to the charge and must be proved as alleged. *Tracy et al.* v. *Swartwout*, 10 Pet. R. 80. *U. S.* v. *Tillotson*, 6 Pet. Cond. R. 507. *Tufts* v. *Seabury*, 11 Pick. R. 140. *Morton* v. *Fairbanks*, id, 368. *Fisher* v. *Duncan*, 1 Hen. & Mum. 563. *Commonwealth* v. *Briggs*, 5 Pick. 429. It was error, also, to charge that the proof supported the indictment, notwithstanding the jury should find that the several pews belonged to the respective

pew-holders, when the evidence showed "that the interest in the house was in the pew-holders," without instructing them what the relative interests of the society and pew-holders must be to maintain the indictment. To sustain the indictment the society must have possession *suo jure*, which the case does not show. *Rickman's* case, 2 East's. P. C. 1034. *Glandfield's* case, id. 1033, *R.* v. *Spalding*, Leach, 248. *Rex* v. *Holmes*, Cro. Car. 376. 2 Stark. Ev. 65-69.

8. The indictment is defective and judgment ought to be arrested. The averment of ownership is material, and ought to have been coupled with an averment giving the society a legal existence. These associations, though under a general law, are strictly private corporations, and the court cannot take judicial notice that the society is an association for the purpose named in the statute, or that the provisions of the statute have been complied with. 7 Wend. 109, 111. id. 377, 378.

The ownership is improperly described. The word, " *of*," cannot be supplied by the words, " belonging to." The word " *belonging*" is descriptive of title or general property, and not of that possession necessary to sustain the indictment. Arson is a crime not against the property but against the possession or habitancy and the statute only extends the subjects of arson. Under the English statute the ownership must be alleged in another, or possession in the prisoner, with an averment that the burning was with intent to defraud a third person. *Rex* v. *March*, 2 Russ. on Cr. 490, note. The word, " *of*," by technical use, is peculiarly descriptive of possession coupled with that present interest necessary to maintain an indictment, and, having acquired a technical meaning, cannot be supplied by other words, especially as the statute has adopted the technical language. Stark. C. Pl. 377, 380. 2 Hale P. C. 182. 1 Hale P. C. 450, 628. Cro. Eliz. 489. 4 Hawk. 49-50. id. 26, 39.

9. The prisoner is entitled to an acquittal, *non abstante veredicto*. As matter of right the respondent was entitled to a verdict, either for or against him, on all the counts. The record shows a verdict on the first count, and upon the second, he may be again arraigned, after having suffered the penalty of the law under the first. Even if this proceeding

would operate a discontinuance of the second count, yet the subject matter is still open to a new indictment, and, in either case, a plea of *autrefoits acquit* could not be interposed, as such plea must set forth a verdict and judgment thereon.

A verdict on the second count was important, as an acquittal on a defective indictment is a good bar, unless it appear that the acquital was founded on such defect. As the jury were instructed, in one event, to take no notice of the second count, it is, at least, a mis-trial and a new trial ought to be granted.

If the proceeding amounts to an acquittal on the second count, then the verdict is bad for repugnancy. A conviction on the specific charge is repugnant to an acquittal on the more general charge. 1 Ch. Cr. Law. p. 169, 251, 440, 641. Hawk. b. 2, Ch. 47, 55.

*D. French*, States Attorney, and *C. D. Kasson*, for prosecution.

I. It does not appear, from the exceptions, how the ringing of the bell was, in any wise, *material* to the issue.

II. The testimony of Silas Spear, as *offered*, was proper to show *malice*. Phil. Ev. 76, 7. 1 Stark. Ev. 491-2, 451. 2 do. 53, 54. *Bullock* v. *Beach & Clayes*, 3 Vt. R. 75.

The facts sworn to by him were fairly left to the jury.

III. The testimony of Mrs. Hibbard was manifestly pertinent, and properly submitted. It went to the *knowledge*, which is all any one can swear to.

IV. As to Scott's testimony ;—

1. It was competent for the prosecution to sustain him, by evidence of good character, when impeached on cross-examination. 3 Stark. Ev. 1757-8. *Rex* v. *Clarke*, 2 Stark. C. 241. 3 C. L. R. 333. *Rex* v. *Teal, et al.* 11 East's R. 307, 10-11. 1 Stark. Ev. 147, 148, 524.

2. There was no disagreement between the charge of the court and respondent's *request*, except it be as to the extent to which Scott should be deemed culpable, or subjected to *infamy*. The case itself shows that he wanted the *intent*, the *will*, which constitutes a *crime*, in withholding a part of the truth when he first testified, for he acted under *duress* when he *withheld* the truth, and *against* his *will*.

V. A more important question arises in relation to the

CHITTENDEN, *January*, 1840.

State
*v.*
Roe.

*ownership* of the church.　Only two questions here arise. Was the evidence competent, *in kind*, to show it? and was it sufficient *in degree?*

1. The exceptions do not show that any other evidence existed than what was introduced.

Hence, it will be presumed that what was offered was of the *highest nature* in existence, which is all that can be required to prove the *fact*.　1 Ch. Crim. L. 462.

2. The jury have, by their verdict, found it sufficient in *degree*.

As to the variance in the name of the society, we think the question cannot arise, as the jury passed upon that *very fact.*

But even if it do, we think it a perfect answer to say that the original articles of association do not *name* the association at all.　So that they were at liberty to take, as they did, a *name* by which they would be known.　The pretended name, in the *articles*, is merely *descriptive of their religious tenets*.　The other branch of this question more properly arises under the motion in arrest.　3 Chit. Crim. L. 870.　2 Russell on Crimes 493-4.　Angel & Ames on Corporations, 56.

VI. The *corpus delicti*, we contend, only relates to the *condition of the subject*—as the man is *dead*—the house is *burnt*, &c.

If the rule be extended so as to require *positive evidence* that the *man* is not only *dead* but *murdered*—or the *house* not only *burnt* but *fired, feloniously*, it must necessarily exclude circumstantial testimony altogether, for who could swear that he saw the man murdered or the house fired, unless he could also swear he saw the guilty one commit the act.　There could seldom be a conviction had, under such a rule.　But we understand this rule to be already settled in a case decided in Addison county, not reported.　1 Gilbert's Ev. 898-9.　1 Stark. Ev. 480, 510.

VII. The charge, in relation to circumstantial evidence, is fully sustained by Starkie and other writers.　1 Stark. Ev. 20, 21, 480, *et seq.* 509, 510.

VIII. No question can arise under the charge as it relates to the second count, whereon the respondent was not found guilty.

IX. The motion for judgment *non obstante veredicto* we

think is obviated by the direction given to the jury, and to

the trial, by the court. The court expressly charged the jury that if certain facts were found they need not go beyond the first count, thus laying the second count entirely out of the case, which is equivalent to a *nolle prosequi*, as to that count. So the case stands the same as though there were never but one count in the indictment.

X. The grounds for the other motion in arrest, are ;—

1. *Repugnancy*, in alleging an *ownership* to property for *public use.* Unless this be repugnant it is no error. The term "*public*" is not a *technical*, but a *popular* word. A *church*, a *school-house*, a *court-house*, a *state-house*, and a *poor-house*, are all buildings for "*public use.*"

And can it not with propriety be said, that they "*belong to*" a *society, school-district, county, town*, or *state*? All these are so many "*publics*," who own and use the buildings. 1 Chit. Crim. L. 539.

2. The charge of ownership, if bad, may be rejected as *surplusage.* If it be repugnant, it is because it is *impossible.* If it be *impossible* it need *not be proved*, and may, of course, be rejected, unless it is so connected with the substantial part of the charge as not to be capable of division.

Here it is a distinct matter, and is merely cumulative of the description. 2 Russ. on Crimes 704, 705, 707.

In the first count, it is alledged that the building is 1. a *meeting house.* 2. erected for- "public use." 3. for the "worship of Almighty God." and 4. that it belongs to a *particular society.*

Now the jury have found all these facts, and all but the last are admitted to be proper allegations.

The last, therefore, if true, as the jury say it is, cannot vitiate. For, if true, it cannot be repugnant to the other truths. Arch. Pl. & Ev. 30-1. Haw. P. C. Chap. 25, §. 62.

The charge of the judge and the evidence admitted were correct. "*Belonging to*" *and* "*the property of*" are synonymous terms. They are both of *possessive signification*, only, and so long as the society mentioned were in possession, it is a sufficient proof of the averment.

As to the property being in the pew-holders, see Hammond's N. P. 204.

Plan, showing the localities mentioned in Scott's testimony, and the testimony of other witnesses.

Judge Foote's

Street.

Mrs. Hibbard's.

Seymour's shop.

North,     Turn-stile.     White Church. Burnt.     South.

Turn-stile.

Mrs. Wadsworth's.

Pearl

Brick Church.

Pottery.

The opinion of the court was delivered by

Collamer, J.—The *right* of the government attorney to enter a *nolle prosequi* is suspended when trial commences to the jury. After that, the power is to be exercised only by permission of the court. The court, in granting permission, will exercise its judicial discretion. If the case appear a clear one for the respondent, the court will not give the permission, as he is entitled to a verdict of acquittal. If the case appear against the accused, he can have no objection to a *nolle prosequi*. In this case there can be no doubt of the identity of the subject matter of the two counts, and a general verdict should have been entered, but, through some inadvertence, a verdict was entered only on the first count. All the counts, in an indictment, should, in some way, be legally disposed of, and therefore the attorney has leave to enter a *nolle prosequi* on the second count.

[A *nolle prosequi* was entered on the second count.]

I. Evidence had been given that just before the church was discovered to be on fire, its bell rung several strokes. The respondent offered evidence tending to show that this might have been accidental, which was rejected. It is error to reject testimony material; but the case must show that it was material. We cannot indulge in fanciful conjectures as to the materiality of the bell having rung. It seems to have been shown without objection. It might have been mentioned to refer to as to time, in the order of events, and to show the consistency or inconsistency of witnesses, or of the respondent's account, but we are unable to discover, and the case does not show, how it was material, whether that ringing was by accident or not.

II. The indictment charged that the church, or meeting-house, belonged to " the first Calvanistic congregational society in Burlington." The proof of this allegation consisted in the paper presented and parol proof, that, from 1810, the society has been known by the name of the first Calvanistic congregational society in *the town of* Burlington, and that they built, and have ever occupied the house. Was this sufficient? The existence of a society or corporation, *de facto*, is sufficient, and that is always shown by parol. Even had it been shown that, in point of fact, the society never were organized and never were a corporation, it was of no impor-

Chittenden,
Januaay,
1840.

State
v.
Roe.

tance. The burning of the meeting house would be arson, within our statute, though it did not belong to a corporation. But, it is said, there is a variance in the name. They take no name in the writing. They might have many names, by reputation, and they are not, in the indictment, attempted to be described by name, but by general character or tenet ; and the words, as to location, *in the town of Burlington* and *in Burlington*, are, in substance, the same. This whole allegation and its materiality, will come again under consideration on the motion in arrest.

III. Scott testified, on the trial, to material matter which he suppressed at the court of inquiry, through fear, as he said. Was it error in the court to leave his testimony with the jury ? Was the court bound to instruct the jury to lay his testimony out of consideration ?

Matter which goes to the *competency* of a witness, excludes his testimony from the jury. This is confined to interest in the event of the suit, or legal infamy, which can only exist or be shown by *conviction* of *crimen falsi*. All matter going to the credit of a witness must, from its very nature, go to the jury together with the testimony of the witness. If the witness, on his cross-examination, disclose improprieties in himself or his testimony, and attempt excuses therefor, most clearly, the jury must judge of the improprieties and the truth and force of the excuses. Hence, it *must* be left to them. Such was this case and such the course taken by the court. Some judges will leave such testimony to the jury, attended with more severe remarks than others; but that is matter of judicial discretion, the extent or neglect of which cannot be assigned for error. This is fully sustained by *King* v. *Teal et al*, 11 East. R. 307. Much stress is laid on the case of *Dunlap* v. *Paterson*. 5 Cowen's R. 243. But there the court did not decide that the testimony should be taken from the jury, nor that the jury should leave it out of consideration. The court below had told the jury it was competent, and they might regard it as they thought it deserved. The court above said they should have charged, that the jury " would have been justified in *disregarding* it." Now, clearly, this, after all, was but telling the jury, *they* were to judge in relation to it, and that, too, when no excuse for

the witness was offered. Still more proper was it to leave it
to the jury when an excuse was attempted.

IV. After the cross-examination had so elicited facts, which
tended to *discredit* the witness, was testimony admissible to sustain his general character ? This was fully decided in this court, in this county, in 1836, in the case of *Fuller* v. *Sanford,* not reported.

V. Much is said about the court neglecting to instruct the jury about the rules of weighing circumstantial or presumptive evidence. It is said the jury should have been told they could not build one presumption upon another, &c. But the case is entirely destitute of any statement of evidence which called for any such instruction. There are, in elementary writers, ingenious but extremely fanciful dissertations on this species of proof. As the human mind, in search of truth, is extremely anxious to reduce moral truths to mathematical certainty, some of the writers have attempted to resolve presumptive evidence into arithmetical proportions and algebraic equations. But all this is merely fanciful, and no adjudged case has settled any such rules. There are some things which the law requires to be positively shown ; such as the *corpus delicti.* But the only degree of certainty known to the law and recognized in decisons, is this ; conviction *beyond a reasonable doubt.* This may be derived from circumstances, the *admissibility* of which is matter of law, but the *weight* of which it matter of fact for the jury. Some rules for weighing evidence are laid down in the books, and the judge may, and perhaps ought, in cases proper in his esestimation, to aid the jury in their investigation, by instructing them in those practical rules. But this rests in his own discretion, depending on his views of the nature of the case and occasion. But no adjudged case can be found where it has been held as error, that the court did not instruct the jury in the most approved elementary rules on the best and safest mode of weighing circumstantial evidence, which the case would have justified or perhaps called for. There probably never was a case of circumstantial evidence tried where the judge gave the jury all the instructions the law would have sustained, but, unless he gave them wrong instructions, it was no error. The want of full instruction may, in some

CHITTENDEN, courts, have been considered ground for *new trial*, but never, January, as is now insisted, was it assigned for error.
1840.

State
v.
Roe.

VI. As to Spear's testimony, there is no exception that it was admitted. In admitting it, the court correctly decided that the threats of another, in the presence of the prisoner, should not prejudice him unless he participated. After it was admitted, the case shows no further request to the court in relation thereto. It is not always easy to put on paper all the evidence of participation, approbation or assent, as it is not always in words. After that testimony was in, it is obvious the counsel made it a point to the jury whether there was any such participation, and it was so left to the jury, and the court was not requested to dispose of it otherwise. The court, therefore, left it to the jury with a repetition of its decision. In this there was no error. The utmost which can be said of it, is, that it was another instance of not doing all which the law would have sustained, but doing nothing illegal.

VII. This brings us to the consideration of the motion in arrest, for the insufficiency of of the indictment. The objection made, is, that it is alleged that the meeting house *belonged to* the society, instead of being alleged that it was the meeting house *of* the society.

At common law, arson is the burning of the dwelling house, mansion, or out house *of another*; and therefore, from the very definition of the crime, it was necessary to allege and prove whose it was. It was always to be alleged as the house of the possessor, occupant or inhabitant; *property* therein being unimportant. Such is our statute as to private property. But, by our statute, the burning of a meeting house, court house, school house, &c., is arson, though they are not capable of habitancy. How could one be indicted for burning a college? It is not the habitancy of the corporation. Is it that of the students? Must they all be inserted by name? So of a school house. The result must be, that, as to public buildings, they do not fall within the principle, and cannot follow the rule or form as to private buildings. Statute 9, Geo. I., makes it capital to burn any house, barn or out house, or any stack of corn, hay, &c., in the night time. On that statute the indictments are drawn by alleging the stack of hay as " *belonging to A.,*" as in the present case. For burning a public prison, called *the Hole*, on 9 Geo. I., in the first

count of the indictment, it is said to be " the prison of the borough of K." And this, Mr. Chitty considers a description of the thing and no averment of ownership or occupancy; and in the second count he entirely omits it. 3. Chitty's Crim. L. 557. It was unnecessary, therefore, as to such public building, to allege that it was *of*, or *belonged to*, any one, and all that allegation was surplusage in the indictment ; but if any thing of that kind was wanted, *belonging to* was sufficient.

Exceptions overruled and sentence passed.