Paine et al. *v.* Tilden et al.

---

CHARLES PAINE AND OTHERS *v.* DAVID R. TILDEN AND HARVEY TILDEN.

One defendant in an action of tort may enter a review of the case, when the judgment is final as to the other defendants ; and this will not have the effect to carry the case forward as to the defendants who do not review.

Ordinarily a joint *tort feasor* is a competent witness for either party, if he be not sued, or be sued in a separate action, or, being joined, have suffered judgment to be rendered against himself.

It is no objection to a witness, who is willing to testify, *and has no interest in the* event of the suit, or is called to testify against his interest, that he is a party to the record.

It is now well settled, that, whenever the character of a witness for truth is attacked in any way, whether by cross examination, or by general evidence of want of character for truth, or by proving statements made by him out of court different from those sworn to, it is competent for the party calling him to give general evidence of his good character.

Paine et al. *v.* Tilden et al.

The plaintiffs caused an attachment to be made of certain sheep belonging to their debtor, for the purpose of securing their debt, and thereby acquired what was supposed by all concerned to be a valid lien. Subsequently the debtor assigned the sheep to the defendant, to be disposed of for the payment of certain debts, the defendant understanding, that he was taking his title subject to the plaintiffs' lien, and not expecting to realize any benefit from it, until the plaintiffs' claim was settled. The debtor afterwards, with the consent of the plaintiffs and defendant, exchanged the sheep for a less number of other sheep, and received a note for the difference, and delivered the note to the plaintiffs in part payment of their claim, and then executed to the plaintiffs a bill of sale of the sheep for which he thus exchanged, as security for the balance of their claim. And the defendant having disposed of these sheep, it was held, that the plaintiffs were entitled to recover against him in trover therefor, to the extent of the balance due upon their claim.

It would not render an attachment absolutely void, as against subsequent attaching creditors, that some of the parties were omitted, who should have been joined as plaintiffs. This would be matter of defence, and might be waived.

Trover for sixty four sheep and two hundred pounds of wool. Plea, the general issue. At the November Term, 1844, there was a trial and a verdict for the plaintiffs for $91,58 damages, and the defendant Harvey Tilden reviewed, but the other defendant did not. At the April Term, 1845, there was a verdict for the defendant Harvey Tilden, and the plaintiffs reviewed. Trial by jury, November Term, 1845,—Redfield, J., presiding.

On trial the plaintiffs gave in evidence a bill of sale of sixty four sheep, signed by David R. Tilden, and dated April 12, 1842. And it was proved, that previous to February 8, 1842, David R. Tilden was the owner of about one hundred sheep, which were in possession of one Chandler, in Berlin. A few days previous to February 8, 1842, these sheep were attached on several writs, in favor of creditors of David R. Tilden, by one Brown a constable, who gave Chandler notice of the attachment and engaged him to keep the sheep for him. David R. Tilden was indebted to the plaintiffs to the amount of $159,91, and on the 8th day of February, 1842, with his consent, a writ of attachment was made against him, brought in the name of the plaintiff Paine alone, and put into the hands of one Silsby, a deputy sheriff, and he attached thereon the sheep at Chandler's, not taking possession of them, but giving Chandler notice of the attachment, and Chandler consented to keep the sheep for him

also.   About the 12th of February, 1842, David R. Tilden applied
to L. & W. Tilden & Co., (which firm was composed of Lester
Tilden and Webber Tilden of Barre, and the defendant Harvey
Tilden of Northfield, all brothers of David R. Tilden, and of which
firm Harvey Tilden was the active partner in the business at North-
field) to assist him in his affairs; and they did either pay, or assume,
all the debts, upon which the sheep were attached, except the plain-
tiffs', and the creditors relinquished their claims to L. & W. Tilden
& Co., and David R. Tilden assigned the sheep to them, together
with all his other attachable property, to secure them, and to be
disposed of to liquidate said claims; and it was then agreed between
them, that David R. Tilden should assist in the disposition of all
the property, so far as he could do so, without exposing it to attach-
ment by other creditors.   Brown, the constable, then directed
Chandler to deliver the sheep to L. & W. Tilden & Co.; but he
refused to do so, without permission from Paine, or Silsby.   Paine
then gave a letter to David R. Tilden, to be carried to Chandler,
informing Chandler, that he might deliver the sheep to Orrin Clark;
and the letter was carried to Chandler by Clark, who was in the
employment of David R. Tilden.   When David R. Tilden gave the
letter to Clark, he told him, that Paine wished to see him, when he
came back with the sheep.   Clark, assisted by the son of David R.
Tilden, drove the sheep from Chandler's to Northfield; and on his
way he called on Paine, who asked him, if he was going to drive
the sheep to Boyce's.   Clark told him, that he was, but that he
should not have time that night; and Paine then directed him to
tell Boyce to keep the sheep for him.   Clark then drove the sheep
to the village in Northfield, where David R. Tilden and Harvey
Tilden lived; and, it being nearly night, the sheep were put into
the garden adjoining the house in which David R. Tilden lived.
The next day permission was obtained by Harvey Tilden to put the
sheep into a garden lot adjoining the one in which they were kept
that night, and with no fence separating them; and the sheep were
put into the latter lot, and Clark, by direction of David R. Tilden,
built a fence between the two lots, so as to keep the sheep from the
lot occupied by him.   The sheep remained there a few days, and
were fed from hay belonging to David R. Tilden, by a man in his
employment, and were then, by direction of David R. Tilden, driven

Paine et al. *v.* Tilden et al.

to the farm of one Boyce, whom David R. had engaged to keep the sheep during the winter,—his brothers becoming responsible for the keeping.

The testimony in the case proved, also, if believed, that Harvey Tilden took the assignment of the sheep at Chandler's, for the benefit of himself and brothers, subject to Paine's attachment, and expecting, from that time until the sheep were killed and disposed of by him, that the plaintiffs must be paid, before he could have any claim to the sheep,—or that, previous to the execution of the bill of sale above referred to, David R. Tilden having, by consent of Harvey, negotiated with Boyce an exchange of the sheep first attached for sixty four other sheep, Harvey consented, that David R. should give the plaintiffs a bill of sale of these last sheep, and should also deliver to the plaintiffs a note for $100, or 250 lbs. of wool, which he received from Boyce as the difference between the sheep,—which note David R. did accordingly deliver to the plaintiffs, and on which they received 245 lbs. of wool, and the balance in money, and credited the amount to David R. upon their claim against him, —and that after this Harvey Tilden always esteemed his claim as subject to the plaintiffs' claim. Boyce knew that the sheep, while in his possession, and previous to April 12, 1842, were under an attachment in favor of Paine, or that he had a claim upon them, but had no communication from him until after the execution of the bill of sale. Paine, upon receiving the note from Boyce and the bill of sale of the sheep, discharged his attachment. The testimony tended to show, that the writ, on which this attachment was made, omitted, by mistake, the names of all the plaintiffs, except Paine. It was conceded, that Harvey Tilden killed and disposed of most of the sheep in the autumn of 1842, and that they were of value equal to the balance of the plaintiffs' claim. All the property of David R. Tilden, which was disposed of by Harvey Tilden, was applied upon debts due from David R. Tilden, or to pay the expenses of keeping his property. The testimony also tended to show, that Paine was consulted by David R. Tilden respecting the exchange with Boyce, and consented to it, on condition that he could have, in lieu of his attachment, a bill of sale of the sheep received from Boyce, and the note given by Boyce for the difference. The testimony also tended to prove, that Paine did not send the letter, directing Chandler to

Paine et al. *v.* Tilden et al.

deliver the sheep to Clark, with a view to release his lien, but directed David R., at the time, to have Clark call upon him, when he drove the sheep along, so that he might give him directions how the sheep should be kept, with a view to preserve his attachment, and that the sheep were kept out of David R. Tilden's possession, with a view to preserve that attachment, until the exchange was made with Boyce.

The plaintiffs called David R. Tilden as a witness; and he was objected to by the defendant Harvey Tilden, upon the ground that he was a party to the suit, and was interested,—and he was rejected by the court. The plaintiffs then delivered to the witness a release, under seal, of all indebtedness to them, except the judgment recovered against him in this action at the November Term, 1844; and the witness was thereupon admitted to testify. The plaintiffs also used one Clark as a witness; who was contradicted, in material parts of his testimony, by the defendants' witnesses, and was also proved, with a view to impeach his credit, to have given different and contradictory accounts, respecting the subject matter of his testimony, from those sworn to by him in court; and the defendant also elicited facts from the witness on cross examination, tending very materially to discredit him. The plaintiffs thereupon called witnesses to support the general character of Clark for truth and veracity; to which the defendant objected; but the objection was overruled by the court.

The defendant requested the court to charge the jury;—1, That Paine, by putting his writ into the hands of an officer other than the one who made the first attachment, acquired no lien by his attachment of the sheep and the notice to Tilden;—2, That if his attachment did create a legal lien upon the sheep, his directing Chandler to deliver the sheep to the servant of David R. Tilden was a full surrender of that lien;—3, That, if his lien were not surrendered, to the time of the exchange with Boyce, it did not extend to the sheep received from Boyce, even though that exchange were made with his consent;—4, That Paine and David R. Tilden could not change Paine's lien upon the sheep from an attachment to a mortgage, or pledge, without the consent of L. & W. Tilden & Co., or of Harvey Tilden, who acted for them.

But the court instructed the jury, that the attachment would not be

Paine et al. *v.* Tilden et al.

rendered absolutely void, by being made in the name of Paine alone, if so made by the mistake of the attorney, but that the writ might be amended by the court, as against David R. Tilden, if not objected to by him, or he might suffer judgment to be rendered against him, and if there were a *bona fide* debt due to the plaintiffs, and judgment were rendered only for the amount due, although the suit was not in the name of all the creditors, the judgment would not, on that account merely, be void;—that the court considered the attachment valid, if made as above described, so long as it was submitted to by David R. Tilden, if the plaintiffs had a *bona fide* debt against him; —that the court did not consider the attachment a nullity, because made by a different officer from the one who made the first attachment, for that, even after property is attached by one officer, another officer may attach it in favor of other creditors, but that, in order to do this, he must take possession of it, and, in so doing, will become liable to the first officer, to the extent of his lien, and may be sued in trespass, doubtless,—but still his attachment will be good;—that so, also, if he find the property in possession of a receiptor, and take possession of it, he may re-deliver it to him, and if he will consent to keep it, the attachment is good;—that, if the attachment were made in this manner, and Chandler were actually keeping the property for Paine's officer, after all the other attachments were removed, the attachment was sufficient in that respect;—that if Paine gave the letter to Chandler merely with a view to have the sheep removed to Boyce's and there kept under his attachment, that act would not dissolve it;—and that, if the sheep were kept over night in the garden adjoining the house of David R. Tilden, but without the consent of Paine, and were immediately put into a separate yard, and there kept, with a view to preserve Paine's attachment, and this were known to Harvey Tilden, and he and his brothers took the assignment, knowing of Paine's attachment, and not expecting to derive any benefit from the property, until Paine's claim were removed, and the sheep were subsequently removed to Boyce's, in the manner attempted to be proved by the plaintiffs, and with the intention of preserving the plaintiffs' attachment, and this were understood by Harvey Tilden, and then Paine, as the agent of the plaintiffs, and David R. Tilden exchanged the attachment for the note of Boyce and the bill of sale, to secure the same debt that had been

Paine et al. *v.* Tilden et al.

secured by the attachment, this would not release the plaintiffs' security, although it was done without the consent of Harvey Tilden, if he were made aware of the exchange, so that he was not misled by it and thereby induced to suppose, that Paine's claim was abandoned,—but that the mere fact, that the change of the form of the security was made without the consent of Harvey Tilden, would not postpone the plaintiffs' claim to his, if it had all along been esteemed prior, and Harvey had consented to the exchange of the sheep with Boyce;—that if this were the state of the case, and Harvey Tilden had killed and disposed of the sheep, he would be liable in this form of action, to the extent of the portion of the plaintiffs' debt still remaining unpaid, and no farther, provided that did not exceed the value of the sheep;—that if the plaintiffs' case were not made out in this view, they would say, whether, from the proof, they were satisfied, that, at the time David R. Tilden delivered to the plaintiffs the note of Boyce and executed to them the bill of sale, Harvey Tilden consented he should do so,—for that the plaintiffs would be entitled to recover to the same extent upon that ground.

The jury returned a verdict for the plaintiffs, for $48,45. Exceptions by the defendant Harvey Tilden.

*J. L. Buck* for defendant.

1. A defendant in an action of *tort* cannot be a witness for the plaintiff,—although he may be for a co-defendant, after he is discharged for want of evidence against him. *Chapman* v. *Graves*, 2 Camp. 333. *Brown* v. *Brown*, 4 Taunt. 753. 2 Stark. Ev. 765. 3 Ib. 1063. When a co-trespasser suffers judgment to pass by default, he is a competent witness for a co-defendant, but not for the plaintiff. 2 Stark. Ev. 769, n. 9. B. N. P. 285. *Worrall* v. *Jones*, 20 E. C. L. 177. *Emmet* v. *Butler et al.*, 7 Taunt. 599. *Mant* v. *Mainwaring et al.*, 8 Taunt. 139. 13 Pick. 125. The discharge given to David R. Tilden can have no effect; for it does not profess to discharge him from the *tort*, for which the defendant is sought to be made liable.

2. Testimony in support of the general character of a witness is inadmissible, unless his evidence is attacked by evidence other than that given by him on cross examination. 1 Stark. Ev. 221. *Rex*

Paine et al. *v.* Tilden et al.

v. *Clarke,* 2 Stark R. 241. *Walker* v. *Stephenson,* 3 Esp. R. 284. 4 Ib. 59. 1 Camp. 207, n. 8 Pick. 143, 154. *Rogers* v. *Moore,* 10 Conn. 13.

3. There was error in the refusal of the court to charge the jury as requested. The plaintiffs acquired no lien on the sheep by the attempted service of their writ by Silsby. *Burroughs* v. *Wright,* 16 Vt. 619. *Watson* v. *Todd et al.* 5 Mass. 271. When a plaintiff does any act, whereby he discharges the officer, he thereby loses his lien by the attachment. By Paine's directions to Chandler the officer was released from all liability. It is not competent for the plaintiff and debtor to make an exchange, or transfer to another chattel, a lien created by attachment, and thereby defeat the rights of third persons. When a third person has acquired an interest in a chattel attached, if the attaching creditor intend to preserve his lien, he must pursue the course prescribed by law, or obtain the consent of all persons concerned; otherwise his lien is lost. *Murray* v. *Eldridge,* 2 Vt. 388. *Hall* v. *Walbridge,* 2 Aik. 215.

4. There was error in the charge. The omission to join all the plaintiffs, in the suit upon which the sheep were attached, rendered the attachment void as to third persons. The proposition submitted to the jury, in relation to the service of the plaintiffs' writ by Silsby, was calculated to mislead them, and should not have been submitted, both for the reason, as the exceptions show, that he took no possession of the sheep, and because it is a question of law, whether the plaintiffs thereby acquired any lien. There was also error, in relation to the effect of Paine's letter to Chandler, and relative to what was afterwards done with the sheep. The defendant acquired an interest in them; and his claim could not be defeated by the plaintiffs, without pursuing a legal course in the disposition of the sheep attached.

*H. Carpenter* and *L. B. Peck* for plaintiffs.

1. David R. Tilden was a competent witness, without a discharge. If the plaintiffs recover, the value of the property goes in satisfaction of their debt. Should the plaintiffs lose, then the property is to be accounted for by L. & W. Tilden & Co., and pays so much of his debt to them. *Ridley* v. *Taylor,* 13 East 175. *Frost* v. *Hill,* 3 Wend. 386. 3 Fairf. 371. But the discharge removes all objec--

71

tion, and leaves the witness standing like any joint trespasser. *West* v. *Bolton,* 4 Vt. 558. *Kimball* v. *Lampson,* 2 Ib. 138. *Brown* v. *Marsh,* 8 Ib. 310. *Morris* v. *Daubigny,* 16 E. C. L. 402. 1 Phil. Ev. 41. If the witness is now to be regarded as a party to the record, his evidence for that reason is not to be rejected. *Flint* v. *Allyn et al.* 12 Vt. 615. *Pipe* v. *Steele et al.,* 42 E. C. L. 888. *Worrall* v. *Jones et al.,* 20 E. C. L. 177. *Norden* v. *Williamson,* 1 Taunt. 378. *Cowles* v. *Whitman,* 10 Conn. 124. *Woodruff* v. *Westcott,* 12 Ib. 134. *Johnson* v. *Blackman,* 11 Ib. 342.

2. The evidence to support the character of Clarke was properly received. *State* v. *Roe,* 12 Vt. 93. 1 Greenl. Ev. 549. *Provis* v. *Reed,* 5 Bing. 435. *Gibbs et al.* v. *Linsley,* 13 Vt. 208. *Rex* v. *Clark,* 2 Stark. R. 241.

3. The writ, on which the sheep were attached, was not *void,* because all the plaintiffs were not parties. It was optional with the defendant in that case to take the objection, or not. If the debt were *bona fide,* his creditors had no ground for complaint.

4. Chandler's agreeing to keep the sheep for Silsby, who served Paine's writ, was, in effect, the same as though Silsby had taken the sheep from Chandler's possession. At all events, after the former attachments were dissolved, Paine's lien, by virtue of his attachment, would attach,—more especially, when Harvey Tilden took the transfer of the sheep with knowledge of this attachment, and with the understanding, that his right was subject to it. *Hall* v. *Walbridge,* 2 Aik. 215.

5. The writing to Chandler, to deliver the sheep to Clark, was not of itself an abandonment of the attachment. Whether it was to have that effect depended upon the intention of the parties,—which was a question of fact for the jury.

6. If the plaintiffs' lien, created by the attachment, was preserved until the exchange with Boyce, and L. & W. Tilden & Co. took their assignment with knowledge of and subject to the plaintiffs' lien, and agreed to the exchange with Boyce, and were apprised of the execution of the bill of sale to the plaintiffs, they cannot, by any legal or moral rule, claim priority over the plaintiffs. And if they consented to the execution of the bill of sale, they are certainly bound by it.

Paine et al. *v.* Tilden et al.

The opinion of the court was delivered by

REDFIELD, J. A question is made in regard to the competency of David R. Tilden to give testimony in this case on the part of the plaintiffs.

Since it has been decided, in this court, that one defendant in an action of *tort* is entitled to review the case in the county court, when the judgment is final as to other defendants, it could hardly be considered, that the review of the action, as to *one*, kept it along, as to the others. For if so, the result *might* be a verdict, on the review, *in favor* of those very defendants *against* whom a *final* verdict had already been rendered. This was so considered in the case of *Sheple et al.* v. *Paige et al.*, in Washington county,—not reported, so far as this point is concerned; but the case subsequently came into this court upon another point, and is reported, 12 Vt. 519.

• But if David R. Tilden *could* be considered a *party to the record*, he clearly had no *interest* in the plaintiffs' recovering a verdict against Harvey Tilden, more than a joint *tort feasor* always has; and no more for being a party to the record, than if he were not so, —there being no contribution between *tort feasors*. And ordinarily a joint *tort feasor* is a competent witness for either party, if he be not sued, or be sued in a separate action, or have suffered judgment to go against himself.

The mere objection, that the witness is a party to the record, when he has no interest in the event of the suit, or is called to testify against his interest, has been too often decided by this court to be of no force, to be again brought in question. • The very point, now in judgment, was expressly decided in Caledonia county, in the case of *Pierce et al.* v. *Lyman et al.*, and virtually in *Sargeant* v. *Sargeant et al.*, 18 Vt. 371. The language of Chief Justice TINDAL, in *Worrall* v. *Jones*, 20 E. C. L. 177, expresses the true state of the English law upon the subject. He says,—" No case has been cited, *nor can any be found*, in which a " witness has been refused, upon the objection in the abstract, *that " he was a party to the record;* on the contrary many have been " brought forward, in which parties to the suit, who have suffered " judgment by default, have been admitted as witnesses, against their " own interest; and the only inquiry seems to have been, in a ma- " jority of the cases, whether the party called was interested in the

" event of the suit, or not; and the admission, or rejection, of the " witness has depended upon the result of this inquiry." After such a declaration from so distinguished a judge in Westminster Hall, it would seem captious, not to say frivolous, to doubt the state of the English law upon this subject. The same rule obtains in Connecticut also; *Johnson* v. *Blackman,* 11 Conn. 342; *Woodruff* v. *Westcott,* 12 Conn. 134; and, having been once solemnly decided by this court, upon full argument, and *repeatedly recognized,* it would seem but a vain labor longer to dwell upon this point in the case. I have said nothing in regard to the effect of the release, as the witness *now* confessedly stands as a mere joint *tort feasor.* How much the general obligation to pay the debt to these plaintiffs, aside from the liability in regard to this particular property, might affect the question of interest, it is not important now to inquire, as any possible interest of *that kind* is released.

The second general question in the case has been often decided at the *nisi prius* trials, and more than once by this court, in accordance with the decision in the court below. It is now well settled, that, whenever the *character of a witness for truth* is attacked *in any way,* it is competent for the party calling him to give *general evidence* in support of the good character of the witness. And we do not think it important, whether the character of the witness is attacked by showing, that he has given contradictory accounts of the matter out of court, and different from that sworn to, or by cross examination, or by general evidence of want of character for truth. This point was directly decided in *State* v. *Rowe,* 12 Vt. 93, and in a case in Windsor county many years since, not reported, I think, and in the case of *Fuller* v. *Sanford* cited by COLLAMER, J., in *State* v. *Rowe.*

The third general ground of objection to the course of the trial regards the title of the plaintiffs. And here, it is obvious, that the *facts* are peculiar; but it does not seem to us, that any question of law is involved in them, which is attended with much embarrassment,—for this reason, that the defendant is expressly found to have taken his title *subject to the claim of the plaintiffs,* and *not expecting to realize* any benefit from it, until the plaintiffs' claim was settled. The testimony upon this part of the case was very considerable, and not a little contradictory,—the plaintiffs claiming, that the defendant

Harvey Tilden and his brothers bought, subject to the security and ultimate payment of their debt,—in other words, that the defendant, and those whom he represented, bought only an *equity of redemption* in the sheep, or the *reversionary interest* of David R. Tilden, which should remain after the plaintiffs' debt *was paid*,—the defendants, upon the other side, claiming, that the plaintiffs made no legal attachment in the first instance, and that they subsequently abandoned all claim under their attachment, or, at all events, that the defendants were kept in ignorance of all such claim, and *bona fide* took an assignment of the sheep, to secure them for endorsing for David R. Tilden, and that, having paid a large amount of his debts, beyond any other security which they had, aside from this property, they are now to be treated as purchasers in good faith, to the full extent of the value of the property in the sheep.

The case was put to the jury upon two grounds, under this division of the case. 1. If the defendant consented to the plaintiffs' having a bill of sale of these sheep, at the time it was given, it would make his title good, independent of all other considerations. The counsel do not object to this part of the charge. But there is no reasonable probability, that the case turned upon this point alone, inasmuch as it is highly improbable, that the defendant would have consented to the plaintiffs' having this bill of sale at the time they received it, if it had not been before understood, that *he had some prior claim to this property for the security of his debt.*

The other ground, upon which the case is put, is, that the defendant, and those whom he represents, took their title to these sheep *subject to the plaintiffs' claim for full security and ultimate payment of their debt.* This, again, is not perhaps probable, except upon the ground that the plaintiffs either *had*, or were *supposed to have, some lien* upon this property, at the time the defendant took his assignment from David R. Tilden. It was for the purpose of rebutting this improbability, that the plaintiffs seem to have gone into so much testimony in regard to the attachment, and its continuance, and its final exchange for the bill of sale. The court commented upon all this in detail, treating the attachment as creating a valid lien, so long as it was continued. We have not examined this part of the charge with much care, since it is obvious that the attachment was finally abandonded and a bill of sale taken in its place.

We do not think it important, to the determination of this case, whether the attachment was in fact absolutely valid, if it was so *considered* by all the parties concerned. We do not perceive any fatal defect in the view taken of the attachment by the court below. It clearly would not render attachments absolutely void, as against subsequent attaching creditors, that some of the parties were omitted; this would be matter of defence, which the debtor might waive, *probably, if he chose.* So, too, in regard to the attachment, it seems, at all events, to have been valid enough, after all the other attachments were removed; and if it were *continued* in the manner attempted to be shown by the plaintiffs, it clearly was not *abandoned.*

What, then, shall be the effect of a purchase, subject, not only to the attachment, but to the *debt* of the plaintiffs? that is, in the language of the charge, if Harvey Tilden and his brothers, knowing of the plaintiffs' claim, "took their assignment, not expecting to derive any benefit from it, until Paine's claim was removed," "and they all along esteemed the claim of the plaintiff *as prior to their claim upon the sheep,*" or, in the language of the witness, with reference to whose testimony this part of the charge is given, "if Harvey Tilden admitted, that he took the assignment of the sheep subject to Paine's attachment, and expecting all along, from that time, until the sheep were killed, and disposed of, by him, that the plaintiffs *must be paid,* before he could have any claim to the sheep?" It seems to us very obvious, that the defendants can be said, under this state of facts, to have, at most, an *equity of redemption,* or a *reversionary interest.* And if this be so, and so the jury have found, unless they found the *express consent* of Harvey Tilden to the bill of sale, it is very clear, that the defendants cannot complain of any *change of the securities,* by which the plaintiffs' claim was secured upon this property, provided they were not misled by it, or the debt increased,—which is not the case here, as found by the jury.

It is probable, that the plaintiffs' debt finally proved larger than the defendants expected; which has no doubt induced them to make this defence in the utmost good faith, and with a very full consideration of its justice. But the acknowledged fact in the case, that David R. Tilden negotiated the exchange of the sheep, and, by the consent of his brother Harvey, carried the note, which he took for the difference, to the plaintiffs, in part payment of their claim, which

they accepted and finally received the pay upon, without any objection, whatever, from Harvey, or the others in his interest, goes far to show, that David was permitted by them to manage this portion of the property with a view to pay the plaintiffs, and that the defendant only expected *what remained, after that was done.* It is obvious, that the plaintiffs so understood that matter, or they would not have relinquished their attachment and taken a bill of sale. So that, under the finding of the jury, we do not well see how the defendant can have a new trial.

Judgment affirmed.