## MARTHA M. SWEET *v.* CHARLES W. SHERMAN.

The statute,—Rev. St., c. 64, §§ 8-10,—which provides, that, when the plaintiff, being an unmarried woman, shall marry before final judgment in the suit, and the husband shall omit to enter his own name with that of his wife upon the docket and give security for costs by the third day of the first term next after the marriage, judgment shall be rendered in favor of the defendant, does

not apply to a case, where the marriage takes place after final judgment has been rendered in the case in the county court, and while the case is pending upon exceptions in the supreme court.[*]

*Quære*, Whether this statute applies to a prosecution under the satute in reference to bastardy.

Upon the trial on a complaint for bastardy the defendant is not entitled to ask the complainant, on cross-examination, whether, after discovering her pregnancy, she consulted a physician in reference to procuring an abortion; neither is he entitled to prove by other testimony, that she did in fact have such consultation.

Nor is the defendant, on such trial, entitled to prove, that another man, who is alleged by the defendant to be the real father of the child, but who has not been called as a witness in the case, consulted a physician in reference to an abortion prior to the time when the complainant testified she first became aware of her pregnancy.

Proof, from other witnesses, that the complainant, in a prosecution for bastardy, has made statements in reference to the paternity of the child inconsistent with her testimony upon the stand, entitles her to call witnesses to sustain her general good character for truth.

But when a witness is contradicted, merely, by evidence which tends to show the fact to which he testifies to be otherwise than as sworn to by him, the party calling him is not entitled to call witnesses to sustain his general good character for truth.  *Semb.*

A prosecution for bastardy is not within the statute, which allows a review "in civil causes tried before the county court."[†]

THIS was a complaint under the statute in reference to bastardy. Plea, not guilty, and trial by the court, September Term, 1846,— BENNETT, J., presiding.

On trial the complainant testified, on cross-examination, that she had no connection with any man except the defendant near the period when the child was begotten, which she alleged was about the twenty seventh of September, 1845, and that she did not suspect her pregnancy, until after that time, and that she never communicated it to any one, until after Dr. Sprague called to see her at the house of one Stimpson, where she then lived, on an occasion when she was sick, and that the first person to whom she communicated

* See *Dana, Adm'r,* v. *Lull, post,* Windsor Co.    † See *Robinson* v. *Dana,* 16 Vt. 474.

it was Mrs. Stimpson, with whom she resided; but that she never talked with Dr. Sprague respecting it, until she saw him at his own house, although she testified, that she was sick at Stimpson's house before this, and that Dr. Sprague attended her there.    The counsel for the defendant then proposed to inquire of her, whether she requested Dr. Sprague, at the time she saw him at his own house, to procure an abortion,—and if so, what she said; to which the counsel for the complainant objected, and the court sustained the objection.

The defendant called Dr. Sprague as a witness, who testified, that he attended the complainant at Stimpson's house on the second, fourth, fifth and twenty third days of October, 1845, and that she at all these times admitted to him her pregnancy.    The defendant's counsel then proposed to inquire of the witness, whether the complainant, at the time she called upon him at his own house, which it appeared was in November or December, 1845, consulted him in reference to procuring an abortion; to which the counsel for the complainant objected, and the objection was sustained by the court. This witness also testified to declarations of the complainant, which tended to show, that some other person than the defendant was the father of the child, although, in such declarations, no particular person was designated as the father.    This witness farther testified, that he was first applied to by Stimpson, with whom the complainant resided, to furnish medical aid to the complainant, as early as the sixteenth of September, 1845; and the defendant offered to prove, that Stimpson then consulted with the witness in reference to procuring an abortion; but the testimony was objected to by the counsel for the complainant and was excluded by the court.

The defendant also called as a witness one Bartley, who gave evidence tending to prove an act of sexual intercourse between the complainant and Stimpson on the twenty fifth of September, 1845; and also one Stebbins, who testified to acts of indecent familiarity between the complainant and Stimpson previous to that time.

The counsel for the complainant then offered evidence tending to prove the complainant to be a person of good reputation for truth and veracity; to which the defendant objected, but the objection was overruled and the evidence admitted.

The counsel for the complainant also called Stimpson as a witness, who denied that he had the connection with the complainant

which was testified to by the witness Bartley, or that the indecent familiarities had passed between them, which were testified to by the witness Stebbins.  On cross examination this witness denied, that he informed Dr. Sprague as early as September, 1845, that he feared the complainant was pregnant, or that he then consulted with Dr. Sprague in reference to procuring an abortion; and thereupon the defendant again called Dr. Sprague as a witness, who, upon inquiry allowed by the court, contradicted Stimpson upon both these points.

The defendant also offered to prove, that the witnesses Bartley and Stebbins sustained good characters for truth and veracity; but this testimony was objected to, and was excluded by the court.

The court rendered judgment for the complainant, and made an order of filiation accordingly.  The defendant then claimed the right to enter a review, and offered sufficient security, as required by the statute; but the counsel for the complainant objected, that no review could by law be allowed in a case of this nature; and the court sustained the objection.

After the suit was entered in the supreme court, the defendant filed a certificate of the marriage of the complainant, February 6, 1847, and moved for judgment, under the statute, for the reason that the husband had not, by the third day of the first term next after the marriage, entered his own name with that of his wife upon the docket of the supreme court and given security for costs.

*P. C. Tucker* and *C. D. Kasson* for defendant.

1. If this is an " *action, or suit,*" it must be dismissed, under the Revised Statutes, chap. 64, sec. 10.  It is such, for it is an adversary proceeding in a judicial tribunal, in which the parties are individuals, where a judgment may be rendered for costs to either party, and for damages sustained, and in which pleadings may be had. *Robie* v. *McNiece*, 7 Vt. 419.  *Gray* v. *Fulsome*, 7 Vt. 452.  *Coomes* v. *Knapp*, 11 Vt. 543.  *Spear* v. *Forrest*, 15 Vt. 435.  There has yet been no " final judgment" rendered.  An execution may issue upon every final judgment; none can issue here.  The files and the record are in this court; if this judgment be affirmed, it is a judgment of this court.

2. The defendant claims, that it was competent for him to in-

Sweet v. Sherman.

quire of the complainant whether she had applied to a physician to procure an abortion during her pregnancy. If her answers had shown, as it was claimed by the defendant they would, that such application had been made at the instance of Stimpson, it would have tended to prove him concerned in her situation. An affirmative answer would not have been the confession of a crime; for no statute in reference to abortions then existed in this state; and an unsuccessful attempt to procure an abortion is not an offence at common law.

3. The defendant claims, that it was competent for him to inquire of Dr. Sprague as to any application made to him by the complainant to procure an abortion.

4. The testimony in support of the complainant's general character was inadmissible. The rule is limited to cases, where, upon cross examination, the witness gives answers tending to impeach himself. 1 Phil. Ev. 308. *State* v. *Roe*, 12 Vt. 93.

5. But if this testimony were rightly admitted, then the exclusion of the evidence to sustain the general character of the witnesses Bartley and Stebbins was erroneous.

6. The defendant was entitled to a review. 7 Vt. 419. 11 Vt. 543. 7 Vt. 452. 15 Vt. 435.

*A. Peck* and *Smalley & Phelps* for complainant.

The statute,—Rev. St., c. 64, §§ 8–10,—was intended to apply only to cases where the action abated at common law. At common law, when coverture of the plaintiff intervened between the verdict and the day *in bank*, the suit did not abate, but the plaintiff had judgment; and the marriage of the plaintiff, pending suit, did not *ipso facto* abate the suit, but only rendered it abateable. Com. Dig. 120. 1 Bac. Ab. 16. Arch. Pl. 286. 4 Ham. 4. 1 Sid. 143. 12 Co. 134 *b.* 10 Johns. 218. Cro. Car. 232. 1 Lev. 169. Hence, clearly, if there is not only verdict, but judgment thereon, in the county court, and the plaintiff marry while exceptions are pending in the supreme court, the action will not abate, as the exceptions are in the nature of a writ of error. The case had proceeded to final judgment in the county court, within the meaning of the statute. The death of a party, while the suit is pending on exceptions, will not abate the suit. *Walker* v. *King*, 2 Aik. 204.

This is not such an action as is contemplated in the statute; it is not a proceeding in the course of the common law.

2. The fact, whether the complainant had consulted a physician in reference to procuring an abortion, was wholly foreign to the issue. Nor would the witness be bound to answer the question, as tending to degrade and criminate her. 1 Greenl. Ev. 606. For the same reasons the court held correctly, that Dr. Sprague could not be asked, whether the complainant had consulted him in reference to procuring an abortion.

3. The evidence as to the complainant's general character for truth was correctly admitted. *State* v. *Roe*, 12 Vt. 111. And the evidence sustaining the characters of Bartley and Stebbins was properly excluded. The distinction is well settled, that when a witness is impeached, either by evidence of general reputation, or by showing that he has given different statements as to the facts to which he testifies, evidence in support of his character for truth is admissible. But when the witness is simply *contradicted,* such evidence is not admissible.

4. The statute provision for a review applies only to cases where there is a common law trial and judgment. This case arises under a special statute jurisdiction.

The opinion of the court was delivered by

BENNETT, J. We think the motion of the defendant to dismiss his own exceptions is without foundation. The grounds, upon which the motion is based, are, that the plaintiff has intermarried since the case came into this court, and that the husband has neglected to join with the wife in the prosecution of the suit by an entry of their names on the docket of the court, on or before the third day of the term next after the marriage. The statute—Rev. St. 329—provides, that, if a woman shall commence an action, or suit, and marry before *final* judgment, the suit shall not abate, but the husband may prosecute the suit with her, by giving bonds for costs of prosecution and entering their names upon the docket. If this be not done, the defendant may file a certificate of the marriage and have judgment against them for his costs.

If it be assumed, that the statute extends to a proceeding like this, while pending in the county court,—which I am led to doubt,

Sweet v. Sherman.

—still it is obvious, that this motion should not prevail. There had been, before the marriage, a final judgment in the county court; and the defendant had brought the case into this court upon exceptions to reverse it. The proceeding is a proceeding in error, and the defendant in the original suit may be regarded as the prosecutor upon the exceptions. If the exceptions do not prevail, the judgment of the county court is left in full force ; and if the defendant should succeed in getting his own exceptions dismissed, I do not see but the same result must follow. The motion to dismiss is therefore overruled.

We see no ground of error in the proceedings of the county court on the trial. It is claimed, that the county court erred, in not permitting the plaintiff to be asked the question, whether she had not consulted a physician in reference to procuring an *abortion*. It is quite obvious, that to have allowed the inquiry would have been improper. Let the question have been answered as it might have been, the answer could have had no tendency either to have proved or disproved the fact, whether the defendant was the father of the child, or not,—which was the point at issue. If there were no other reason, why the question should not have been asked, this was sufficient. Certainly, it could not be claimed as proper matter by way of impeaching the witness.

It is claimed, that the county court erred in permitting evidence to be given of the general good character of the plaintiff for truth and veracity. It appears from the case, that the defendant had given in evidence the declarations of the complainant, which went to show, that some other person than the defendant was the father of the child. This was inconsistent with her testimony on the stand, and had the effect to impeach her as a witness, upon the ground that she had given a different relation, in regard to the paternity of the child, from the one given on the stand. It was held in the case of *State v. Roe*, 12 Vt. 111, that where, on the cross examination of a witness, it appeared he had given a different relation from the one given on the stand, the party calling the witness might sustain him by proof of his general good character for truth. That case was decided upon the authority of a previous decision, of the like import, in the case of *Fuller* v. *Sanford*. The question, then, decided in that case, we should regard as at rest in this state, what-

ever the rule may be in England. The only question open is, does the present case come within the rule which we have established? It is true, the complainant is made a witness by statute, in relation to the paternity of the child; but we see no reason, why the same rule should not be adopted in relation to sustaining her, when impeached, which would be applied to a common law witness; and it can make no difference, whether it appear from the cross examination, or from the examination of other witnesses, that the witness on the stand has given a different relation from the one given on the trial.

Some other questions were made on the trial; but we do not deem them of sufficient importance to occupy any time.

In regard to the denial, by the county court, of a review of the cause, it may be said, that the statute has *received* but one practical construction; and that has been in unison with the ruling of the county court. This cannot be regarded as an action, within the purview of the statute, allowing either party once to review his cause. The object of this proceeding is to procure an order of filiation upon the putative father, and thus compel him to aid the mother in the support of the child,—and not to recover a sum in damages, for any independent claim, which she may have against the father.

The result, then, is, the judgment of the county court is affirmed.