## ROBERT A. STEVENSON *v.* HUGH GUNNING'S ESTATE.

*When sustaining testimony admissible. Party cannot object to evidence on issue raised by himself. Tax inventories as evidence. Will of intestate not admissible. Immaterial issue. Presumption of innocence must be overcome by one alleging crime. Burden of proof. Expert witness in use of microscope.*

1. When the testimony of a witness is attacked only by showing its improbability, and by other testimony conflicting with it, sustaining testimony that the witness bears a good reputation for truth and veracity is not admissible.

2. If one party has raised an issue by the introduction of evidence upon his side, he cannot afterwards object to the admission of evidence offered by his adversary upon the same issue for the reason that such issue is not strictly material.

3. One defence to the note was want of consideration. As tending to show where he obtained the money for which it was given, the plaintiff gave evidence that about 1859 he began to work for his father under an arrangement that he was to have $100 a year, and that in 1869 his father had accumulated a considerable sum which afterwards came to him. *Held,* the grand lists of the father and son for the year 1869, showing that neither the father nor son were taxed

for personal property, but upon the contrary claimed to be owing would be admissible, but, *quere,* without holding it reversible error, could the further fact that the plaintiff stood by without objection while the father gave in his inventory be shown, and did not the court give this testimony too much prominence by assuming that the inventories were then signed and sworn to as at present.

4. The maker of the note having deceased, it was error to receive in evidence his will, executed after the date of the note, and the statement of his affairs made to the one who drew the will at the time it was drawn.

5. The plaintiff could not properly testify in contradiction of the executor upon an immaterial matter drawn out by the plaintiff upon cross-examination, although transpiring subsequent to the decease of the intestate.

6. The defendant claimed that the note was a forgery and that the evidence in support of its execution was perjured. *Held,* that the jury should have been instructed that there was a legal presumption against the commission of both of these crimes, which the defendant must overcome.

7. *Held,* that there was no such state of the evidence in the case as called for a charge defining the relative force to be given positive as compared with negative testimony.

8. If the defence to a note be want of consideration, the plaintiff cannot by proof of the execution and delivery of the note cast upon the defendant the burden of making out this defence. The burden of proof is still upon the plaintiff to show a consideration, although the note itself would be an important piece of evidence to be weighed in his favor.

9. One who is an expert in the use of the microscope, but not in the matter of hand writing may tell the jury what he sees upon the examination of a written instrument with the microscope, but may not give an opinion as to whether a certain figure has been altered and how.

This was an appeal from the award of commissioners for the allowance of claims against the estate of Hugh Gunning. The action was assumpsit for the amount of a promissory note. Pleas, the general issue, statute of limitations and notice under the statute, denying the genuineness of the signature to the note.

Trial by jury at the June term, 1891, Munson, J., presiding. Verdict and judgment for the defendant. The plaintiff excepts.

The note was dated June 1st, 1886, for the sum of $4550, payable to the plaintiff or order. The evidence of the plaintiff tended to show that from 1859 he had lived with his father upon the home farm in the town of Barnet, and worked upon said farm under an arrangement that he was to receive $100 a year; that in 1868 his father had already accumulated a considerable sum of money and continued to so accumulate until 1879; that in 1879 his father and mother, there never having been any settlement with him for his work on the farm, deeded the farm to him and a sister, upon condition that they should maintain the father and mother for life; that at this time the father had accumulated, and had in the house, three $1000 bills and one $500 bill, of which he placed $2500, in one envelope and $1000 in another, saying, that when the plaintiff had performed the conditions of the deed, this money should belong to him; that the plaintiff's father died in 1879, his mother in 1889, and his sister in 1886, none of their estates ever having been settled in the Probate Court. The plaintiff's evidence further tended to show, that he went on under the deed and performed all its conditions, and that he had in 1886 accumulated the sum of $1,000 in addition to the $3,500 which his father had in 1879; that Hugh Gunning, the intestate, was well acquainted with the plaintiff and his family, and knew of these accumulations and that the plaintiff had this sum of money in the house; that in June, 1886, the said Gunning came to the plaintiff's house in the night time, apparently in great trouble, said that he had fallen into a trap and would have to go to the State's prison unless he could raise $5,000; that he had $450 and wished to borrow $4,550 from the plaintiff and did not want any one to know; that the plaintiff declined to let him have so large a sum without a witness, and told him to come again and he would see about it, and that he then and there wrote a note for $4,550 which he told Gunning

he should want him to sign if he had the money ; that Gunning did come again in about one week with the note ; that the plaintiff's brother and sister were both present when the plaintiff got the money, gave it to Gunning and took the note in question. The evidence of the defendant tended to show that in June, 1886, when said note was given, as claimed by the plaintiff, Gunning was at the house of one James Craig, in Peacham, and was not away from there long enough to go to the plaintiff's house at any time during that month ; that Gunning had no occasion for so much money, and that if he had, he could have raised it without calling upon the plaintiff, since he owned $5,000 in United States Government bonds, which were at his disposal ; and that the plaintiff did not have any such amount of money to loan Gunning, if he had needed it and called for it.

The brother and sister of the plaintiff were improved by him as witnesses. In reference to the testimony of the latter, the exceptions state, "The sister was cross-examined at great length and it was claimed by defendant that her story both upon direct and cross-examination was improbable and unworthy of belief, and it was claimed by the defendant and argued to the jury that the testimony of the plaintiff's brother and sister as to the giving of the note and delivering of the money, was false and perjured and that said note was a forgery. But no evidence was offered by the defendant, that the witness had made statements out of court different from her statements in court nor was any foundation undertaken to be made for such contradiction in her cross-examination, nor was any evidence introduced to discredit the witness except as testimony was introduced which tended to show that the facts were otherwise than as testified to by her."

The plaintiff offered to show in rebuttal that his sister bore a good reputation in the community where she had always lived for truth and veracity. This evidence was excluded by the Court under the plaintiff's exception.

The plaintiff in the opening of his case introduced evidence tending to show that his brother James had been long acquainted with Gunning and was on friendly terms with him, and that James supplied $50 of the money which was loaned Gunning, there in Gunning's presence. Against the objection and exception of the plaintiff the defendant was allowed to show that Gunning entertained ill feelings towards James from 1891 to the end of Gunning's life, and was allowed to show by various witnesses against the exception of the plaintiff, that Gunning at various times expressed feelings of hostility toward James, and that he did not treat him in a friendly manner.

The defendant was allowed against the exception of the plaintiff to put in the grand list of the town of Barnet for the years 1868 and 1869 and to prove by one Gilfillan that he was a lister in those years, took the list of the plaintiff. and his father and that they did not give in any property but polls, and claimed to be in debt to the amount of their personal property. The said Gilfillan was further permitted to testify that the plaintiff was present when his father gave in his list and made no dissent from it.

The defendant was also permitted against the exception of the plaintiff to show by Geo. P. Blair, the executor named in the defendant's will, that he went to the house of Gunning at the time he drew the will and that Gunning then gave him general information as to the condition of his estate and property ; and afterwards to introduce a certified copy of the said will.

Upon cross-examination of this witness the plaintiff enquired whether he, the plaintiff, claimed before the commissioners that most of his money came from his mother, to which the witness replied, that he did not so claim. Thereupon the plaintiff offered himself in rebuttal to show that he did make this claim before the commissioners.

The remaining facts sufficiently appear in the opinion.

*W. P. Stafford* and *Bates & May*, for the defendant.

The evidence as to the reputation of the plaintiff's sister was properly excluded. *State* v. *Roe*, 12 Vt. 93 ; *Paine* v. *Tilden*, 20 Vt. 554 ; *Sweet* v. *Sherman*, 21 Vt. 23 ; *Mosley* v. *Ins. Co.*, 55 Vt. 142 ; *Atwood* v. *Dearborn*, 1 Allen 483 ; s. c. 79 Am. Dec. 755 ; *Wright* v. *McKee*, 37 Vt. 161 ; *State* v. *Daley*, 53 Vt. 442 ; *State* v. *Emery*, 59 Vt. 84 ; Taylor's Ev. s. 1476 ; *People* v. *Gay*, 1 Park. Cr. Rep. 308.

Since the plaintiff himself raised the issue as to the state of feeling between his brother James and the intestate, he could not be allowed to object to evidence upon that point when offered by the defendant. *Knight* v. *Smith*, 57 Vt. 529 ; *State* v. *Ward*, 61 Vt. 153 ; *Palmer* v. *Cook*, 7 Gray 418 ; *Jones* v. *McLellan*, 76 Me 49 ; *Shailer* v. *Burnstead*, 99 Mass. 120 ; *Bartheleny* v. *People*, 2 Hill, 257, note (6) ; 1 Greenl. Ev. ss. 102, 107 ; *State* v. *Daley*, 53 Vt. 442.

The will of Gunning was properly admitted in evidence. *State* v. *Hopkins*, 50 Vt. 316 ; *State* v. *Daley*, 53 Vt. 442 ; *Perkins* v. *Blood*, 36 Vt. 273 ; *Noble* v. *Sylvester*, 42 Vt. 146 ; *Kimball* v. *Ladd*, 42 Vt. 747.

Doctor Hartshorn might properly testify as an expert in the use of the microscope. *Bridgeman* v. *Corey's Est.*, 62 Vt. 1 ; *Bierce* v. *Stocking*, 11 Gray 174 ; *Gossler* v. *Eagge & Co.*, 103 Mass. 331 ; *Sweet* v. *Shumway*, 102 Mass. 365 ; *Stone* v. *Hubbard*, 7 Cush. 595 ; *Quinsagamond, etc.* v. *Hobbs*, 7 Gray 250 ; *Com.* v. *Sturtevant*, 117 Mass. 122 ; s. c. 19 Am. Rep. 401 and note.

The charge of the Court as to the presumption of innocence was correct. *Weston* v. *Gravlin*, 49 Vt. 507.

Also as to the burden of proof in showing a consideration for the note. *Small* v. *Clewly*, 62 Me. 165 ; *Delano* v. *Bartlett*, 6 Cush. 364 ; *Nichols* v. *Munsel*, 115 Mass. 567 ; *Powers* v. *Russell*, 13 Pick. 69 ; *Burnham* v. *Allen*, 1 Gray 496 ; 1 Dan. Neg. Ins. s. 164.

Robert A. Stevenson *v.* Hugh Gunning's Estate.

*J. P. Lamson, Smith & Sloane,* and *Alexander Dunnett,* for the plaintiff.

Evidence of the good character of the plaintiff's sister for truth and veracity should. have been admitted. *Mosely* v. *Ins. Co.,* 55 Vt. 142.

The testimony of Gilfillan was not a sufficient foundation for the admission of the grand lists of 1868 and 1869. *Brainard* v. *Buck,* 25 Vt. 573 ; *Hersey* v. *Burton,* 23 Vt. 685.

The statements of Gunning to Blair when he drew the will and the will itself, were declarations in favor of the intestate and inadmissible. *Wright v. Boston,* 126 Mass. 161 ; 2 Best Ev. 626 ; Smith's Leading Cas., 392 ; *Huse v. Preston,* 51 Vt. 245 ; *Gates* v. *Morse,* 51 Vt. 222 ; *Crump* v. *Starke,* 23 Ark. 131 ; *Higham* v. *Ridgway,* 10 East 109 ; *State* v. *Duncan,* 6 Ired. N. C. 236.

Hartshorn was not an expert in the matter of handwriting, and his opinion in that particular was inadmissible. *Johnson* v *Castle,* 63 Vt. 452 ; *Bridgeman* v. *Corey's Est.,* 62 Vt. 1 ; *Bemis* v. *Railroad,* 58 Vt. 636 ; *Wright* v. *Williams' Est.,* 47 Vt. 222 ; *State* v. Ward, 39 Vt. 225.

The Court should have instructed the jury as requested upon the presumption of innocence. Law. Pres. Ev. 27 ; 3 Stark. Ev. 1248 ; 1 Best Ev. 448 ; 1 Greenl. Ev. ss. 33 to 35 ; *Greensborough* v. *Underhill,* 12 Vt. 604 ; *Fire Association* v. *Bank,* 54 Vt. 657.

The charge of the Court as to the burden of proof was erroneous. *Bank of Troy* v. *Topping,* 13 Wend. 557 ; *Kinsman* v. *Birdsall,* 2 E. D. Smith 395 ; *Campbell* v. *McCormac,* 90 N. C. 491 ; *Bryne* v. *Grayson,* 15 La. An. 457 ; *Middelbury* v. *Case,* 6 Vt. 165 ; 1 Best Ev. 426, 589 ; 2 Greenl. Ev. 172 ; 3 Phil. Ev., marginal page 169, 131 and cases there cited ; Sto. Pr. Notes, s. 7 and 181 and note ; Rand. Com. Paper, ss. .562, 563, and cases cited ; *Gerrish* v. *Bragg,* 55 Vt. 329 ; *Arnold* v. *Sprague,* 34 Vt. 402.

The opinion of the court was delivered by

ROSS, Ch. J.   1.   The first contention is whether the County Court erred in excluding testimony offered in rebuttal, to show that the plaintiff's sister, who had been a material witness in his behalf, sustained a good reputation and character for truth and veracity.   She had been cross-examined at great length, and it was claimed by the defendant that her story was improbable, and unworthy of belief, that it was false and perjured.   The defendant did not claim that she had made statements out of court different from her statements in court, nor was any foundation attempted to be laid by the cross-examination for such contradiction, nor did defendant introduce any evidence to discredit the witness, except to show that the facts were otherwise than as testified to by her.   On the statement of the position of the witness, we think, the Court properly excluded sustaining testimony in regard to her character for truth and veracity.   The rule governing the introduction of sustaining testimony of this kind is stated as follows, in 3 Starkie on Ev. 1757 :   " And in all cases when the credit of a witness has been attacked whether by general evidence, or by particular questions on cross-examination, it seems that the party who called him is at liberty to support his testimony by general evidence of good character.   So if the character of the attesting witness to a deed or will be impeached on the ground of fraud, evidence of his general good character is admissible.   But the mere contrariety between the testimonies of adverse witnesses, without any direct imputation of fraud on the part of either, supplies no ground for admitting general evidence as to character."   To the same effect is the rule as stated by Mr. . Greenleaf in his work on evidence, Vol. 1, s. 469.   He says, "Where evidence of contradictory statements by a witness, or of other particular facts, as for example that he has been committed to the house of correction, is offered by way of impeaching his veracity, *his general character for truth* being thus in some sort,

*put in issue*, it has been deemed reasonable to admit general evidence, that he is a man of strict integrity, and scrupulous regard for truth  *   *   *  but mere contradiction among witnesses examined in court, supplies no ground for admitting general evidence as to character." The rule thus laid down is well supported by citation of decided cases. Our decisions are to the same effect. *State* v. *Roe*, 12 Vt. 93 ; *Paine* v. *Tilden*, 20 Vt. 554 ; *Sweet* v. *Sherman*, 21 Vt. 23 ; *Mosley* v. *Insurance Co.* 55 Vt. 142. There is no discussion of the principle governing the decision in *State* v. *Roe*. It is made to rest on an unreported case, then recently decided. But in *Paine* v. *Tilden*, this language is used: "Whenever the *character of a witness for truth* is attacked *in any way*, it is competent for the party calling him to give *general evidence* in support of the good character of the witness." It is observable that a distinction is taken between an attack upon *the character* of the witness as such *for credibility*, and the *character of the testimony, given for belief*. It is only when *the character of the witness for credibility is directly attacked*, by general evidence regarding his standing and character for truth and veracity, or by showing that he has made contradictory or inconsistent statements, either out of court, or in court, or that he has been convicted of some crime, or engaged in some act affecting his credibility like suborning or attempting to suborn a witness, or suppress testimony in the case on trial, that sustaining evidence can be used. But when the character of the testimony given by a witness is attacked only by showing its improbability, or by other testimony conflicting with the testimony of the witness, sustaining testimony cannot be admitted. If admitted, when there is only a conflict in the testimony of opposing witnesses, the opposing witnesses on both sides could be supported by sustaining testimony in regard to their standing and character, by reputation as witnesses, and the trial would be prolonged indefinitely. Besides the character of the testimony

given by a witness, does not directly attack the character of the witness for credibility. The distinction between an attack upon the character of the witness, and the character of his testimony, is recognized in *Sweet* v. *Sherman*, 21 Vt. 23. The plaintiff's character for credibility was attacked, and sustaining evidence was held properly admitted. The testimony of two of the defendant's witnesses was attacked by opposing testimony. The defendant offered testimony to sustain these witnesses by showing they bore a good character for truth and veracity, which was excluded against the defendant's exception. The court affirmed the judgment without alluding to this exception which was in the case and argued in the defendant's brief. The facts are not given on which the question arose in *Mosley* v. *Insurance Co.* Some of the language of the opinion, may be rather broad and unguarded, but it states the rule correctly, and claims to, and no doubt, the facts would show if given, does follow, *State* v. *Roe*, *Paine* v. *Tilden* and *Sweet* v. *Sherman, supra.* 'This exception is not sustained.

2. The plaintiff, to raise a probability that the intestate would be willing to apply to him secretly, for money in the presence of his brother James, introduced testimony to show that the intestate's and James' relations were friendly. Whether this testimony was strictly admissible or not, its introduction laid the foundation for receiving counter testimony from the defendant. Its reception would not be legal error of which the plaintiff could complain, he, having raised this issue, even if the issue was not strictly involved in the trial of the case. Nor do we observe anything inadmissible on this issue in the testimony of Mrs. Craig. If the plaintiff desired the particular acts or sayings of the parties which the witness testified indicated that ill feeling existed between them, the plaintiff could have called them out.

3. Moses Gilfillan was allowed against exception to testify in regard to the lists given in by plaintiff and his father in 1858 and 1869. The plaintiff's testimony tended to show that he be-

gan to work for his father some ten years before, on an understanding that he was to have one hundred dollars a year for his work, and that his father before 1868 had accumulated some of the money which the plaintiff claimed he loaned to the intestate in 1886. The plaintiff did not claim that he settled with his father, so that this money would become his at the death of his father and mother, until 1879, and that his father died that year, and his mother ten years later. This witness' testimony and the grand lists of the town, which were allowed to be put in against the exception of the plaintiff, tended to show that neither the plaintiff nor his father gave in any personal property, but claimed they were owing. The Court also allowed this witness to testify that the plaintiff, though present when the father gave in his list, did not deny his father's statements. This was before the taxpayer was required to make an inventory of his taxable property under oath. The Court in the charge treated these lists as made up from inventories returned by the plaintiff and his father. While the father's list, and what he said at that time might be received as bearing upon whether he had laid by money, as claimed by the plaintiff, and the plaintiff's list might be received as bearing upon whether his father owed him for work as he claimed, we do not think the plaintiff was under any duty to reply to, or correct, or contradict the statement of *his* father, in regard to his property to this lister, and that portion of this testimony was erroneously received, and that the Court gave the lists undue prominence by representing them as made from inventories made by the plaintiff and his father. We do not determine whether under the circumstances, these were material, reversible errors, inasmuch as we find such error in the next point.

4. We think it was error to receive the testimony of George P. Blair, and the will of the intestate. The force of this testimony was to show from the intestate's representations at the time the witness drew his will, and his declarations contained in

his will, that the intestate did not owe the debt sued for by the plaintiff. They were really declarations and entries made by the intestate in his own favor. By his death the plaintiff was rendered incompetent to testify to the transaction resulting in giving the note. It would give the intestate an unfair advantage, if his declarations and entries could be shown while the mouth of the plaintiff was closed by the death of the intestate. In legal effect, this testimony was not different from that held to have been erroneously received in *Godding, admr.* v. *Orcutt*, 44 Vt. 54. In that case, inventories of his property made yearly by the intestate and his entry on an execution in regard to what he had done with property bid off by him, both bearing upon issues involved, were held to have been erroneously received. In principle that decision controls this. The witness on cross examination, having denied that the plaintiff before the commissioners told witness that most of the money which went into the note came from his mother, the plaintiff was offered to dispute this denial and to show what he did say. The denial was called out by the plaintiff, and so far as shown by the exceptions was immaterial to any issue on trial. It is familiar doctrine, that a witness can not be impeached on immaterial matter. There was no error in the exclusion of the offered testimony.

5. Dr. Hartshorn was shown to be an expert in adjusting and using the microscope. He did not profess to have skill in examining hand writing, nor ink, nor change in the color of ink. He had examined the note, before it had become worn and before a thin paper had been pasted upon its back. Though not an expert, he could testify to what he saw when he made such examination. He was allowed against exception, to go further than describe what he saw when he made the examination, and to give his opinion that what appeared to be a figure six was when first made a figure one, and had since been changed to a six. This was giving his opinion on what he saw and described, as a matter of skill and expert knowledge on a subject on which

he did not claim to be skilled. The charge treats this as the opinion of an expert witness. The allowance of the opinion of this witness was error.

6.   The plaintiff requested the court to charge the jury that in this case where the defence is forgery of the note in suit, there is a presumption of innocence of that crime which the defendant must overcome. He also requested the court to charge there was the same presumption of innocence of the crime of perjury. The defendant claimed and gave testimony tending to show that the note was a forgery, and that plaintiff's sister who testified to being present and knowing of the execution of the note, was guilty of perjury. The presumption of innocence arises in the trial of civil cases, whenever either the grounds of recovery or defence involve and charge the commission of a crime. *Greensborough* v. *Underhill,* 12  Vt. 604 ; *Bradish* v. *Bliss,* 35 Vt. 326 ; *Fire Association* v. *Bank,* 54 Vt. 657. It is a legal presumption, arising, not usually in the trial of civil cases, but in particular cases, dependent upon whether the grounds of recovery or defence involve the commission of a crime. Being a presumption of law properly arising in the case, it was the duty of the Court to have complied with the request. In *Fire Association* v. *Bank, supra,* such a request was made. It was applicable to the case. This court said, " The defendant was entitled to the charge called for by the request," but held that the request was complied with. The request was proper. It related to a question of law arising in the case. It was the duty of the Court to have charged on the subject unrequested, much more error to decline to charge on the subject when requested.

7.   There is no statement of such facts as furnished a foundation for the request to charge with respect to the relative force to be given positive compared with negative testimony. The defence was not by the denial, or failure to remember, of a witness who was present when the note was executed, but rested upon testimony tending to show the note was never given. This

is not negative testimony within the rule. We discover no error in the charge with reference to reconciling the testimony of witnesses.

8. The plaintiff requested the Court to charge that if the jury find that the signature on the note is Hugh Gunning's, and that he signed it and gave it to the plaintiff, that makes a *prima facie* case for the plaintiff, and that in order for the jury to find for the defendant he must show by balance of evidence that the note is not due, the burden of proof is on him at that point, as the note imports consideration. The Court did not comply with this request but charged on this subject, "The burden is upon the plaintiff to snow that this note was signed by Hugh Gunning, and that he had the consideration for which the note purports to be given. If, however, you find that the note bears the genuine signature of Hugh Gunning, the note itself will then be an important piece of evidence to be weighed upon the plaintiff's side in determining the further question whether Gunning had the money. But the burden will still be upon the plaintiff to establish from all the evidence that the consideration of the note was paid." We do not think that the plaintiff was entitled to have his request complied with, and that the charge correctly stated the law of the subject applicable to this case. It is true when the plaintiff established that Hugh Gunning signed and delivered the note, the note of itself imported a consideration, and the plaintiff had made out a *prima facie* case, and was entitled to recover, if nothing further was shown. But when the defendant introduced testimony tending to shown want of consideration, the burden was still upon the plaintiff to establish that consideration was given by him for the note. While the plaintiff in the first instance, if nothing more was shown, lifted the burden resting on him by establishing the execution and delivery of the note, as a note, when the defendant introduced testimony tending to show want of consideration, the burden still was on the plaintiff to show considsideration, having weighed in his favor the *prima facie* import of

consideration, furnished by the note proved to have been duly signed and delivered. By telling the jury that if they found that the note itself bore the genuine signature of Hugh Gunning, the note would then be an important piece of evidence weighed on the plaintiff's side in determining whether Gunning had the money, the court gave the jury in effect the full force of the *prima facie* import of consideration, furnished by a duly executed and delivered deed.

This disposes of all the exceptions now insisted upon.

*Judgment reversed, cause remanded.*