# STRAFFORD,

## JULY TERM, A. D., 1858.

## STATE *v.* WENTWORTH AND STONE.

Upon an indictment under the statute for maliciously placing obstructions upon the track of a railroad, evidence showing that the prisoner placed on the track other obstructions than those for which the indictment was found, is competent, provided the acts are so connected that they may be regarded as being the continuation of the same transaction.

In such an indictment it is not necessary to allege the legal existence or organization of the corporation, or the ownership of the road, nor to prove the same, unless the averment be such as to be matter of essential description.

Where the allegation was that the defendants "wilfully and maliciously did place upon the track of the railroad of the Boston and Maine Railroad, in Somersworth, two iron rails," &c., — *Held,* that the averment was not one of property, but a description of the railroad where the obstructions were placed, and that parol evidence that the road was called and known by the name of the Boston and Maine Railroad, was sufficient.

Confessions obtained by the influence of hope or fear are incompetent evidence. But it is not necessary that the confession should be the prisoner's own spontaneous act; and if it be made under the promise of some collateral benefit or boon, no hope or fear being held out in respect to the criminal charge against him, it will be competent.

Where a prisoner stated that he was in company with an individual on the evening of the commission of the offence, and went to a place where he said the individual resided, and did business with him there, — *Held,* that evidence of unsuccessful attempts, made on the next day, to ascertain if there was any such individual, by going to the place stated, and making inquiries of persons residing there, was competent.

An indictment need not state that it was found at a *trial* term of the Supreme Judicial Court. It is sufficient to state, generally, that it was found at a term of the Supreme Judicial Court.

State *v.* Wentworth and Stone.

If an indictment set forth the town and county in which the offence was committed, it is sufficient, without stating that it was committed in this State.

An indictment for maliciously placing obstructions on a railroad, need not aver that the road was a corporation, or carrier, or a way, or road used for travel.

Where the county is stated in the margin of an indictment, it is sufficient, in describing the place where the offence was committed, to say that it was in the town of A, "in the county aforesaid."

In an indictment upon the statute for maliciously placing obstructions upon a railroad, " whereby the life of any person may be endangered," it is not necessary that the names of the persons riding in the cars, whose lives are endangered, should be set forth. And where the indictment described the obstructions, accompanied by this averment, "whereby the lives of sundry persons, to wit, twenty persons, riding in said cars upon said railroad, were greatly endangered," — *Held*, that the averment was sufficient.

INDICTMENT, for placing obstructions upon the track of a railroad.

The indictment alleged that the defendants, " at Somersworth, on the 4th of March, 1857, with force and arms, feloniously, wilfully and maliciously did place upon the track of the railroad of the Boston and Maine Railroad, in Somersworth aforesaid, in the county aforesaid, two iron rails, two large stones and two large pieces of wood, being an obstruction to the passing of the railroad cars thereon, whereby the lives of sundry persons, to wit, twenty persons, riding in said cars upon said railroad, were greatly endangered."

It appeared in evidence upon the trial that a train of cars coming from Boston, Mass., upon the Boston and Maine Railroad, towards the Great Falls station, upon that railroad in Somersworth, and which was due at that station at twenty minutes before 8 o'clock, in the evening of said 4th of March, ran over two stones, of considerable size, which had been placed upon the track, and against two iron rails, which had been laid across it at a point about one or one and one fourth miles below said station.

Said stones and rails were placed upon the track at intervals of ten or twelve rods from each other. The time when the train ran upon and against the obstructions was within two or three minutes of the time it was due at the station. At about 7 o'clock on the same evening there was found upon said track, at a point near the gas-house, about a half mile nearer to the station than where said rails were placed across the track, another iron rail, apparently placed there for the purpose of obstructing the approaching train, which rail was immediately removed from the track by the person who discovered it, and all of said obstructions had been placed upon the track after 6 o'clock on that evening. At about 8½ or 9 o'clock on the same evening, two other iron rails and other obstructions were found upon the track, at the point where the stone, most remote from the station, had been met by the train, and a few rods below that point, which were not upon the track when the train passed ; and all of said obstructions were apparently placed upon the railroad for the purpose of occasioning damage to the trains passing upon it. The train, when it met the obstructions, was moving at the rate of from thirty to forty miles per hour, that being the usual speed at that place. The counsel for the State elected to proceed for those obstructions which were upon the track before the train passed, for which the indictment was found. The court ruled that under this indictment a conviction could not be had for placing the rail near the gas-house, upon the track — that being removed before the train reached Somersworth, and there being no evidence that it actually endangered the life of any person ; and the case was submitted to the jury upon the question, whether the defendants placed upon the track the two stones and two rails, met by the train, or any of them, as constituting together one obstruction. There was no evidence tending to show that either of these two stones or rails were placed there by the defendants, or by any other

person, which did not equally apply to the other of them. There was evidence tending to show that the defendants placed the rail near the gas-house upon the track, which did not bear directly upon the question whether they placed the other obstructions upon it. To this evidence the defendants objected, but it was admitted. The defendants also objected to the evidence introduced by the State to show that the obstructions were found upon the track after the train passed, but it was admitted. The court instructed the jury that the evidence introduced to show that obstructions were placed on the track near the gas-house, after the train passed, was of no consequence in the case, except as those facts bore upon the question whether the defendants or either of them placed said two rails and stones thereon; and that they might take those facts into consideration, as having a bearing upon that question; and if, upon the evidence, they were satisfied that either or both of the defendants placed the other obstructions there, they might weigh that as evidence against the prisoner who placed them there, upon the other question, whether he also placed upon the track the said two rails and stones; to which instructions the defendants excepted. There was parol evidence that the said railroad was called and known by the name of the Boston and Maine Railroad, but no evidence of the organization or existence of any corporation. The court ruled that this was sufficient on this point to maintain the indictment.

The State introduced evidence of the declarations of Wentworth, as to where he was and how he was employed on said evening, and then introduced evidence tending to show the falsity of said declarations; among which was the statement of Wentworth, that he went to Salmon Falls on that evening, in company with a man named William Hasty, who, as he, Wentworth, stated, lived at Salmon Falls, and that he did business with him there on that

evening. The State then proved by William Drury, that he, Drury, went to Salmon Falls after Wentworth had so stated, and made inquiries in various places, and of many persons there, for a man of that name, and could obtain no information of such person. To this the defendants objected, but it was admitted.

On the 5th of March the Boston and Maine Railroad corporation caused hand-bills to be posted in their station-house, and other public places in Great Falls village, where the defendants resided, offering a reward of $100 for the detection of the person who placed the obstructions upon their railroad. On that day Wentworth had stated, in conversation with some of the agents and servants of the corporation, that he went to Salmon Falls the evening before, in company with Hasty. In that conversation one of said agents stated to Wentworth that he thought he, Wentworth, was the person who placed the obstructions on the track, and requested him to produce the person in whose company he went to Salmon Falls the evening before, at his, the agent's expense; and that if he could be satisfied, upon seeing him, that he, Wentworth, was not on or about the track the evening before, there should be no proceedings against him for the offence. On the 6th of said March said agent and Wentworth went together, at the agent's request, to the office of an attorney-at-law, and there Wentworth admitted that he knew who placed the rail upon the track near the gas-house, and stated that it was Stone, the other defendant. There was evidence tending to show that previous to this Wentworth had seen one of said handbills. The defendants' counsel objected that the declaration of Wentworth, made under these circumstances, could not be used as evidence against him, but the objection was overruled by the court.

The jury returned a verdict against the defendants, which they moved to set aside for error in the rulings aforesaid.

The defendants also move in arrest of judgment, because the indictment does not appear to have been found at a trial term of this court; because it does not allege that the offence was committed in this State; because it does not allege, in the words of the statute, that the obstruction was one " whereby the life of any person may be endangered;" because it does not allege that the railroad was a corporation, or a carrier of passengers or freight, or a way, or road, used for travel, or that it belonged to any corporation, or person; or that it was used for travel, or that any person had the right to use it for travel or carrying freight thereon; because it does not allege that the railroad was called or known by any name; because it does not allege that the rails and stones mentioned therein were an obstruction at the time they were placed upon said railroad, or at any time after, until the finding of the indictment; because it does not allege the obstructions with any allegation of place; because it does not set out the name of any person whose life might be or was endangered; because it alleges that the life of more than one person was endangered; because it does not allege that the life of any person might be, or was endangered, at the time the alleged obstructions were placed upon the track, or at any time thereafter, until the finding of the indictment, and because it does not allege that the cars on said railroad, or any person therein, whose life might be or was endangered, were rightfully or lawfully on said railroad.

The questions arising upon the case were reserved for the consideration of the whole court.

*G. S. Sullivan,* and *Doe,* for the defendants.

1. It is not competent to give evidence of facts tending to prove another distinct offence, for the purpose of raising an inference that the prisoner committed the offence in question. The prisoner's tendency to commit the offence with which he is charged cannot be proved. Roscoe 81;

2 Russell 772; 1 Greenl. Ev., sec. 51; 1 Phil. Ev. 471; 15 N. H. 169; Wharton 238.

If putting on the rail near the gas-house tends to prove putting on other rails, half a mile distant; if putting on rails after the train passed tends to prove putting on rails before the train passed, then the commission of any offence tends to prove the commission of another similar offence. The rail near the gas-house was put on some where from 6 to about 7 o'clock; the last obstruction was put on some where from about 8 to 9 o'clock. Larcenies separated by the interval of half an hour are not one continuing transaction, but distinct offences, and cannot be charged and proved as one. Roscoe 81, *Birdeye's Case*; 4 C. & P. 286. In this case it was not pretended to try the defendants for the three obstructions as constituting one offence, but only for the obstruction hit by the train. The rail near the gas-house, and the obstruction put on after the train passed, were not parts of the obstruction hit by the train, but were distinct and separate obstructions, for which other indictments will lie. And to allow the jury to find the defendants guilty of one because they found them guilty of the other, would result in this, that on each indictment the defendants might be convicted by evidence which would support the other indictments without any evidence to prove the indictment on which they were tried, and thus they could be three times convicted, solely by evidence of offences of which they were not accused.

2. The offence alleged is placing an obstruction "upon the track of the railroad of the Boston and Maine Railroad."

The words "Boston and Maine Railroad" are the description of the preceding words, "the railroad," and that description could not be proved by "parol evidence that the said railroad was called and known by the name of the Boston and Maine Railroad." "Of the Boston and

Maine Railroad" means that "the railroad" was the property of, or belonged to "the Boston and Maine Railroad," and such property or ownership might be proved by showing that "the railroad" was in the possession of and used by such a person, or such a corporation as "the Boston and Maine Railroad." There was no evidence that there was any such person or corporation as "the Boston and Maine Railroad" in existence, nor that the railroad belonged to such person or corporation.

3. The testimony of Drury was not admissible. Although in a negative form, it was affirmative in substance. It was of no significance except as evidence that the persons of whom he inquired, told him that they did not know such a man as William Hasty. Their declarations to that effect were proved as substantially as if Drury had testified to the answers given by them to his inquiries. The persons of whom inquiries are made, in each case, should be called to testify that they did or did not know such a man. 1 Phil. Ev. 185; 1 Greenl. Ev., sec. 199; *State* v. *Clark*, 23 N. H. (3 Foster) 429.

In this case, Drury's testimony left it to be inferred that the persons of whom he inquired did not know William Hasty, which was in the nature of a declaration and statement by them that they did not know him. If such evidence is ever allowed it is only in preliminary questions addressed to the discretion of the court.

4. The confession of Wentworth that he knew that Stone placed the rail upon the track near the gas-house, was not admissible. The material inquiry is, whether the confession has been obtained by the influence of hope or fear. 1 Greenl. Ev., sec. 219; 27 N. H. (7 Foster) 256. The law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes confessions, if *any* degree of influence has been exerted. If there be reasonable ground for presuming that the disclosure was made under the influence

of any promise or threat of a temporal nature, the evidence ought not to be received. 2 Stark. Ev. 27, 36.

The points made in the motion in arrest of judgment to which we ask the particular attention of the court, are :

1. The indictment does not appear to have been found at a trial term of this court. "Two terms * * * to be denominated trial terms, shall be holden," &c. "At these terms grand jurors shall attend," &c. Laws 1855, chap. 1659, sec. 16.

2. It does not allege that the offence was committed in this State, except by reference to the caption. The caption is no part of the indictment. Whart. 111; 2 Hale's P. C. 165.

3. It does not allege that the Boston and Maine Railroad was a corporation, or carrier, or way, or road used for travel. The statute was intended only to protect the public, traveling by steam, in great numbers and at great speed, on common thoroughfares. It was not designed to prevent obstructions being put upon insignificant side tracks, or wooden tracks, a few rods or a few feet long, owned by individuals, and used by horse power or hand power, for moving articles in a store, barn, brick-yard, or factory, or on a farm, and not used for travel, though life might possibly be endangered by obstructing such tracks, on even a miniature railroad, or a model of one.

4. It does not properly allege the obstruction with time and place. Time and place must be attached to every material averment. Wharton 110; Chitty's Pl. 288, 290. "Being" refers to the present time. Wharton 113. It is not stated where the obstruction was, nor when nor where life was endangered.

5. It does not set out the name of any person whose life was endangered. The statute requires that life shall be endangered, to constitute the offence. "May" often means "shall." Comp. Stat., chap. 226, sec. 1; Ib., chap. 229, sec. 4, and chap. 238, sec. 10. And this is its natural

State *v.* Wentworth and Stone.

meaning in this statute. If the statute was intended to require only that the obstruction should be of such character as to be capable of endangering life, it would have been so expressed, or it would have forbidden any act done with intent to obstruct the cars. It is necessary that the names of the persons injured or attempted to be injured, and the names of all others whose existence is legally essential to the charge, should be set forth. If their names are unknown they must be so described; and if in such case it appear in evidence that their names were known, the indictment is bad. 3 Greenl. Ev., sec. 22; 2 Russell 795; Archbold's Cr. Pl. & Ev. 80.

*Hamlin,* (solicitor) and *Christie,* for the State.

1. The evidence in regard to the obstruction at the gashouse, and those found after the train passed, was rightly admitted. The case does not show for what purpose the evidence was offered. If, then, it was competent for any purpose, as against either of the defendants, the exception to its admission cannot prevail. The indictment charges the act to have been done willfully and maliciously. The "malice" is an essential ingredient of the crime, and as such must be proved. Evidence of other acts than those charged in the indictment are admissible to prove malice. Archbold's Cr. Pl. 110; Roscoe's Cr. Ev. 87; 3 Greenl. Ev., sec. 15. And this rule of evidence applies to subsequent equally as well as precedent acts.

When several felonies are committed together, and form one transaction, upon an indictment for one the other may be proved, to show the character of the transaction. Archbold's Cr. Pl. 100, and cases there cited; *Rex* v. *Ellis,* 6 B. & C. 145.

2. As to the description of the railroad, we contend that the words, "Boston and Maine Railroad," signify a particular railroad, and nothing else. There is no allegation or intimation that they mean any thing else. They

mean then a thing, and not a person or corporation. We contend, further, that the word "of," when used in connection with a neuter noun, does not signify ownership, but rather "part of," or, as Worcester defines "of," "proceeding from." The expression, then, "track of the railroad of the Boston and Maine Railroad, in Somersworth," &c., means the track of the railroad, part of, or proceeding from the Boston and Maine Railroad, in Somersworth, &c. The idea of the indictment, then, would be that it embraced that part of the Boston and Maine Railroad which was in Somersworth — the Boston and Maine Railroad extending farther than the limits of the town.

3. The testimony of Drury was properly admitted. The point to be proved was a negative, which cannot be proved directly as affirmatives can. The utmost that could be done in this matter would be to bring in the inhabitants of Salmon Falls, to testify that they did not know such a man to be living there; but this testimony would be of no higher degree than the testimony of Drury to the same point. Evidence of diligent inquiries at the place of a person's last residence and among his relatives, and any others who probably would have heard of him, if living, and at his place of foreign residence, if he had any, is the required evidence to establish the death of a party. 13 Shep. 361; *White* v. *Mann*, 2 Greenl. Ev., sec. 278, Ed. 1854. Evidence may be competent to prove a negative that is not competent to prove an affirmative. 1 Stark. Ev. 439; *Furnace* v. *Cope*, 5 Bing. 114.

4. The statement of Wentworth was rightly received. The true questions in cases of this character, are, were there any inducements or threats, calculated to operate on the fears or hopes of the party, held out or made? and if so, did they induce the confession. If both of these questions are answered in the affirmative, the confession is to be excluded, otherwise not. Archbold's Plead. & Ev. 118; Greenl. Ev., sec. 219. As to the handbill, if ever seen by Wentworth, it was an entirely collateral matter. As to

State *v.* Wentworth and Stone.

what the agent said, "that if he could be satisfied, on seeing him, (Hasty) that he, Wentworth, was not on or about the track the evening before, there should be no proceedings against him for the offence," how is it supposed that this induced a statement from him, that he was on or about the track, on the evening referred to?

5. It is objected that the indictment does not set out the name of any person whose life was endangered. The form of the indictment is given by Archbold, and alleges that the safety of "divers persons" was endangered, as in the present indictment, and no names are given. Archbold's Plead. & Ev. 340.

6. The office of the caption of the indictment, is to serve as an introduction, and to set forth at what court and at what term of the court the indictment is found. By the act of 1855, it is directed that "trial terms of the Supreme Judicial Court shall be holden annually, at the times and places following: at Dover, * * * * on the third Tuesday of March, for the county of Strafford." There is but one Supreme Court. The law terms and trial terms are terms of the same court. But one term (the trial term) is authorized to be holden on the third Tuesday of March, at Dover, for the county of Strafford. The description, then, "at the Supreme Judicial Court, holden at Dover, on the third Tuesday of March," &c., can mean no other than the trial term, and is sufficient.

7. It has always been understood, and held, that the words, "county aforesaid," refer to the county named in the margin, which is no part of the caption. Archbold's Pl. 39, and authorities there cited. The practice has been so for a very long period, and it would be strange, indeed, if it were now to be held erroneous.

8. The terms of the statute are, "any railroad." It does not define what a railroad is. That is left for judicial construction, and it certainly will not be required of the pleader to anticipate what that construction may be. It is

sufficient for him that he follow the words of the statute. Archbold 51.

9. The allegation of time and place of the obstruction is well enough. *R.* v. *Bank,* Archbold 37 ; Cro. Jac. 41. Mere circumstances accompanying acts, need not be laid with time and place. March's Pl. 127 ; *R. & Johnson,* 2 Rol. Rep. 226.

EASTMAN, J. Several questions are raised by this case, and some of them we have found to be not without difficulty.

The first question presented relates to the admissibility of the evidence showing obstructions upon the track of the railroad other than those for which the conviction was had. At about twenty minutes before 8 o'clock the train struck the obstructions for which the indictment was found. On the same evening, about forty minutes before the train hit the obstructions, there was found upon the track near the gas-house, about half a mile from the place where the train struck, an iron rail—apparently placed there for the purpose of obstructing the train—which was immediately removed from the track. About an hour after the train struck and passed along, two other iron rails and other obstructions were found upon the track near where the train struck, which were placed there after the train passed. All of the obstructions were placed upon the track after 6 o'clock that evening. Upon this evidence the court instructed the jury, in substance, that if they were satisfied that the prisoners, or either of them, placed the rail upon the track near the gas-house, and the rails and stones upon the track after the train passed, they might weigh these acts as evidence against the prisoner who placed them there, upon the question whether he also placed upon the track the obstructions for which he was indicted. Was this evidence competent, and were these instructions correct ?

State *v.* Wentworth and Stone.

It is a fundamental rule that evidence must correspond with the allegations of an indictment, and be confined to the point in issue. Accordingly it is not competent for the State to prove another distinct offence for the purpose of raising an inference that a prisoner has committed the crime with which he is charged. 1 Greenl. Ev. sec. 550; 1 Phil. on Ev. 178; Roscoe's Cr. Ev. 73; *State* v. *Renton,* 15 N. H. 169.

When, however, it is material to show the intent or the malice with which an act is done, other acts than those charged in the indictment are oftentimes competent evidence. Thus in case of treason, the declarations of the prisoner, and seditious language used by him, and acts committed in another country, are admissible as tending to prove the overt acts charged. *Rex* v. *Watson,* 2 Stark. 134; Foster's Crown Law 10; 15 Howell's State Trials 747. So in case of a note where the intent is in question. *Rex* v. *Hunt,* 3 Barn. & Ald. 566. And on an indictment for sending a threatening letter, another letter from the prisoner, explanatory of that set forth in the indictment, is admissible. 2 East's P. C. 1112. And upon a charge of a conspiracy to cheat, proof is admissible showing that the prisoners at a different time made similar representations to other tradesmen than those named in the indictment. *Rex* v. *Roberts,* 1 Camp. 400; Roscoe's Cr. Ev. 87. On indictments for passing counterfeit money, also, or for uttering forged paper, knowing it to be such; for shooting, with intent to kill; and in civil actions for defamation, where the damages depend upon the degree of malice, such evidence is competent. *Rex* v. *Wylie,* 1 New Rep. 92; *McKenney* v. *Dingley,* 4 Greenl. 172; *Bridge* v. *Eggleston,* 14 Mass. 245; *Symonds* v. *Carter,* 32 N. H. 459; *Chesley* v. *Chesley,* 10 N. H. 330; 1 Greenl. Ev., sec. 53.

And where the offence complained of is so connected with other acts of the prisoner that they may all be regarded as forming one entire transaction, it is in the

discretion of the court to receive evidence of the whole. If, however, the other acts proposed to be shown are of themselves indictable offences, the evidence is generally excluded, unless the prosecutor will consent to an acquittal on all but one. *Rex* v. *Westwood*, 4 Carr. & Payne 547 ; *Rex* v. *Dunn*, Ry. & Mood. Cr. Cases 146. But in *King* v. *Ellis*, 6 Barn. & Cress. 76, it was held that where several felonies are so connected together as to form part of one entire transaction, evidence of them all may be given in order to prove the party guilty of one. In that case the prisoner was indicted for stealing money from the till in a shop, and it was shown that he took money from the till several times in the course of the day, which had been marked so as to be identified. It was objected that each taking was a distinct felony, but the evidence was admitted as being part of one entire transaction.

In *Heath* v. *Com.*, 1 Robinson's (Virg.) Rep. 735, and which is cited as authority in Wharton's Cr. Law 171, on a trial for murder, evidence was offered that the prisoner, on the same day that the deceased was killed, and shortly before the killing, shot· a third person ; and it was held admissible, although it tended to prove a distinct felony committed by the prisoner ; such shooting and the killing of the deceased appearing to be connected as one entire transaction.

In *Com.* v. *Willard*, 1 Mass. 6, which was an indictment for shop-breaking and for stealing from the shop, proof that part of the goods stolen were found in the defendant's possession was held to be *primâ facie* evidence, not only of the stealing, but of the breaking and entering, as alleged in the indictment. And in an indictment for arson, in *Richman's Case*, 2 East's P. C. 1035, evidence showing that property which had been taken out of the house at the time of the firing, was afterwards found in the possession of the prisoner, was held competent.

It is oftentimes material to show, where the evidence adduced is circumstantial only, that the prisoner was in a situation to have committed the offence charged; and when such fact is important to be established, evidence confined to the point is competent.

The evidence introduced in this case, showing the rail upon the track near the gas-house, and the obstructions placed upon the track after the train passed, was not received for the purpose of showing the intent or the malice of the prisoners. The rulings and instructions of the court will not warrant such a conclusion. The jury were in effect told that these acts, if done by the prisoners, might be considered upon the question whether they had placed upon the track the obstructions for which they were indicted. We cannot therefore hold the evidence competent, as showing the intent or malice of the prisoners, as has been argued; and if it was admissible, it must be upon the ground of its immediate connection with the offence charged, so as properly to form a part of the same transaction. And, after some hesitancy, we have come to the conclusion that in this view of the matter the evidence may be regarded as competent. All of the several obstructions were placed upon the track within about two hours, and probably within a much less time, and the distance between the most remote of them was about half a mile. If the defendants placed the rail upon the track near the gas-house, before the train came along, they were in the vicinity of the track about the time that the obstructions which the train hit must have been placed there. And so, also, if they placed the obstructions on after the train passed, they must have been there about the time that it did pass.

These acts would show that the defendants were near the place where the offence was committed, about the time it was committed, and that they were consequently in a situation to place the obstructions on the track, and had the strength and ability to put them there. The acts were

the conduct of the prisoners about the road; and taking into view the time when the several obstructions were placed upon the track, and their nearness to each other, and we think that they may be regarded as so far connected as not to be objectionable to the rule that the evidence must be confined to the point in issue. They may be considered as the continuation of the same transaction. They show that the defendants were in a situation to commit the offence charged.

The second exception taken to the verdict and to the ruling of the court was, that no competent evidence was offered to show the existence of any such corporation as the Boston and Maine Railroad, nor that the railroad belonged to such corporation.

The indictment charged that the defendants placed the obstructions "upon the track of the railroad of the Boston and Maine Railroad, in Somersworth." The testimony upon this point consisted of parol evidence that the railroad was called and known by the name of the Boston and Maine Railroad, but there was no proof of the organization or existence of any corporation. The court ruled that the evidence introduced was competent to maintain the indictment on this point.

The statute upon which this indictment was founded is as follows: " If any person shall willfully and maliciously place any obstruction on the track of any railroad, or remove any rail therefrom, or in any way injure such railroad, or do any other thing thereto, whereby the life of any person may be endangered, he shall be punished by solitary imprisonment," &c. Rev. Stat., chap. 215, sec. 3.

The offence described in this statute is complete by willfully and maliciously placing an obstruction upon the track of any railroad, whereby the life of any person may be endangered. It is not material whose property the road is, nor whether owned by individuals or a corporation; nor, if owned by a corporation, whether such corpo-

ration has been legally chartered or legally organized. If it is a railroad in actual use, and the obstruction is maliciously placed upon the track, so that the life of any person may be endangered, the crime is committed, and the offender is liable to the penalty fixed by the statute. The offence does not consist in the injury done to the track of the road, or to the locomotive or cars, or to any other property, but in placing the obstructions upon the road, or doing the other acts whereby danger is caused to the lives of those who may be passing on the road. The ownership or possession of the road is, therefore, not material; it does not enter into the essence of the crime; and if not material, then it is not necessary to be alleged in the indictment. It is unlike the crimes of larceny, burglary and arson. In larceny the statute settles the matter. The provision is, " if any person shall steal, take and carry away the property of another;" and in several cases of larceny the ownership of the property is material to be fixed and its value found, inasmuch as it forms the basis of the sentence. In burglary, the essence of the crime is the terror caused to the occupants of the dwelling. 2 Leach 931; 2 East's P. C. 501; Whar. Cr. Law 363; and hence the necessity of stating who the occupant is. It may be the owner, or a tenant. *State* v. *Rand,* 33 N. H. 216. And the same rule prevails in arson. Arch. Cr. Pl. 206; Whar. Cr. Law 377; *State* v. *Sandy,* 3 Iredell 570; *People* v. *Van Blarcum,* 2 Johns. 105.

In *Commonwealth* v. *Wade,* 17 Pick. 395, a *quære* is suggested, whether, in an indictment charging that the defendant set fire to a building, and that by the burning of such building a dwelling-house was burned, it be necessary to state who was the owner or occupant of such building, or that it was the building of another — the gravamen of the offence being the burning of the dwelling-house.

And in *State* v. *Roe,* 12 Vt. 93, upon an indictment for burning a meeting-house, it was held that it was unne-

cessary to allege who was its owner or occupant, and that any such allegation, if made, was immaterial.

The statute upon which this indictment was founded is comparatively recent, and similar statutes in other jurisdictions are also recent; and no decided case has come to our knowledge where a construction upon this point has been given. The constitution provides that "no subject shall be held to answer for any crime or offence, until the same is fully and plainly, substantially and formally, described to him;" and an indictment should inform the accused of all the leading and material grounds of the charge against him, in due form, that he may thereby be enabled to make his defence; and likewise be able to plead the conviction or acquittal in bar to another prosecution for the same offence. If a prisoner, charged with placing obstructions upon a railroad, under this statute, is informed by the indictment in what place the obstructions were put upon the road, the nature and character of the obstructions themselves, and the name of the railroad on which they were placed, he has all the information upon that point that is necessary for his defence. It gives him the information plainly, fully and substantially, and it is of no consequence to him to know who owns the road. He is told both what and where the road is, upon which the obstructions have been placed; he is informed of their nature, and the place where they were put upon the road, and his crime consisting in maliciously placing the obstructions upon the road, whereby the lives of the travelling public are endangered, it is immaterial for him to know to whom the road belongs, or who occupies it.

And if the ownership or occupancy of the road does not enter into the essence of the offence, and consequently is not material to be alleged in the indictment, then it cannot be material to be proved, unless so averred as to become matter of essential description.

As a general rule, all descriptive averments in an indict-

ment must be proved as laid; but if an averment may be entirely omitted without affecting the charge against the prisoner, and without detriment to the indictment, it may be disregarded in evidence. *State* v. *Copp*, 15 N. H. 212; *State* v. *Bailey*, 31 N. H. (11 Foster) 521; 1 Phill. Ev. 207.

The allegation in this indictment is, that the defendants "willfully and maliciously, did place upon the track of the railroad of the Boston and Maine Railroad, in Somersworth, two iron rails," &c. The evidence to sustain this averment was, that the railroad was called and known by the name of the Boston and Maine Railroad; and the exception was, that the existence of the corporation, or that of the road belonging to the corporation, should be shown. The exception proceeds upon the ground that the description in the indictment is one of property—that the import of the language is, as though it had been stated to be the track of the railroad "belonging to," or "the property of," the Boston and Maine Railroad. It is undoubtedly true that, at common law, in arson, burglary and larceny, where the burning, breaking and theft are committed upon the property of individuals simply, the description of the ownership of the property is expressed by the preposition "of;" thus in arson, it is described as "the dwelling-house of him, the said A. B., there situate;" in burglary, "the dwelling-house of one E. F., there situate;" in larceny, "of the goods and chattels of him, the said G. H." But in the forms of indictments upon the various statutes, both English and American, extending these offences, particularly arson and burglary, to many other buildings and to other property than dwelling-houses, the description of the ownership of the property is expressed by the phrase, "belonging to," or the "property of," or, "in possession of." Thus in arson, for burning a church, it is described as "belonging to" the second parish in the town of A.; or for burning a stack of hay, the same phrase is used, or "property of;" and for burning a cotton

State v. Wentworth and Stone.

mill, it may be described, if the facts be so, as "in the possession" or "occupation of." 3 Chitty's Cr. Law 1129, 1130. And under the statute of 9 George 1, Chitty, in giving the form for setting fire to a place of confinement, describes it as "a certain building there situate, and being called the Hole, the same then and there being the prison of the borough of K., in the county aforesaid." In his marginal note he says that this count is describing the building to be a prison; and in the second count of the indictment he omits entirely the phrase, "the same then and there being the prison of the borough of K.," treating it merely as a description of the building, and not of ownership or occupancy. 3 Chitty's Cr. Law 1129; State v. Roe, 12 Vt. 113.

We do not, therefore, feel pressed by any weight of authority to construe the expression used in this indictment as meaning the property of the road. According to the doctrine of State v. Roe, it might be wholly rejected as surplusage; and by precedents furnished by Mr. Chitty, which may be regarded as analogous to this, the expression can be well considered as a description of the railroad where the obstructions were placed, and not of any ownership or property. The averment may be treated the same as though it had said, "the track of the Boston and Maine Railroad," or "the track of a railroad called the Boston and Maine Railroad." And if it had been intended to allege property in the road, it should, according to the precedents of indictments upon the statutes to which we have alluded, have said that it was the track of the railroad "belonging to," or "the property of," the Boston and Maine Railroad.

With this view of the allegation, the evidence offered was competent to sustain it. It was proved that the road was called and known as the Boston and Maine Railroad, and upon the construction which we put upon the averment, this is all that is alleged, and is sufficient to answer

the requirements of the statute. The defendants cannot be misled by the averment, and to require the government to allege in whom the property in a railroad is, and to prove it, or to show that it has been duly chartered and organized, would oftentimes render a conviction next to impossible.

The next question raised was as to the admissibility of the testimony of the witness Drury.

There is no rule of evidence better established than that hearsay is not competent testimony. But it does not follow that, because the words in question are those of a third person, they are necessarily hearsay. On the contrary, it happens, in many cases, that the very fact in controversy is, whether such things were spoken, and not whether they are true. Thus, replies given to inquiries made at the residence of an absent witness, or at the dwelling-house of a bankrupt, denying that he was at home, are original evidence. So to establish the death of a party, inquiries at the place of his last residence or among his relatives, and the answers, are competent. 2 Greenl. on Ev. sec. 278; *Emerson* v. *White*, 29 N. H. (9 Foster) 297. In these and the like cases it is not necessary to call the persons to whom the inquiries were addressed, since their testimony could add nothing to the credibility of the fact of the denial. Wherever the fact that such communications were made is the point in controversy, the evidence is admissible. 1 Greenl. on Ev. secs. 100, 101.

Drury did not pretend to testify what the persons of whom he made inquries said to him, but simply stated the fact of his ineffectual effort to obtain information. That was all that was attempted to be proved by him; and had the persons of whom he sought to obtain the information been called as witnesses, they could, upon this point—the point of his seeking information—only have testified that Drury made the inquiries and failed to obtain information,

which is all he has testified to. They might have gone further, and testified that they never knew or heard of such a man as Hasty. The evidence in both instances would be similar, and negative in its character, and entitled to more or less weight according to the means of observation and knowledge that the witnesses might have. In both instances it would be the evidence of a fact, the result of more or less of knowledge, but not the rehearsal of what others had said. And upon this view, which was the one taken by the court at the trial, we think the evidence was admissible.

It is further objected to the verdict that evidence of the admissions made by Wentworth was improperly admitted. It is contended that the admission that he knew who put the rail upon the track near the gas-house, and that he stated it was Stone, was made under the inducements held out by the agent, or by the reward that was offered, and that these inducements were such as to show that the admission was not voluntary, and therefore not competent.

The general principle that all confessions that are obtained by the influence of hope or fear, are incompetent, is well settled. 4 Hawk. P. C. 425; 1 Greenl. Ev. secs. 215, 219; 1 Phill. on Ev. 111; *State* v. *Due*, 27 N. H. (7 Foster) 259.

But it is not necessary that the confession should be the prisoner's own *spontaneous* act; and if it be obtained by a promise of some collateral benefit or boon, no hope or favor being held out in respect to the criminal charge against him, it will be competent. 1 Greenl. Ev. sec. 229; *Rex* v. *Green*, 6 Carr. & Payne 655.

In *Regina* v. *Boswell & als.*, 1 Carr. & Marsham 584, upon the commission of the crime of murder, a reward of £100 was offered to any one who should give such information and evidence as should lead to a conviction; and also the promise of the secretary of the Home Department, that a pardon would be recommended to an accomplice who

should give such information as should lead to the same result. The court held that the mere knowledge by the prisoner of such a handbill would not be sufficient ground for rejecting the confession, unless it appeared that the promise made, that a pardon would be granted, had induced him to make the confession.

In the present case it does not appear distinctly that Wentworth had seen one of the handbills; but even if he had, it contained no promise of favor or pardon to the guilty party; nor does the case state any evidence that the reward was brought to his notice by any one so as to have been contemplated by him, or to have had any influence upon his mind. And at best it was but a collateral boon. We think it quite manifest that the admission was not objectionable upon this ground.

Nor do we discover any thing in what was said by the agent, that convinces us that the admission was caused by any promises or threats made by him. On the 5th of March the agent requested Wentworth to produce the person in whose company he said he went to Salmon Falls, at his, the agent's expense, and said that if he should be satisfied, on seeing him, that Wentworth was not on or about the track the evening before, he should not be prosecuted. The agent had no power to make any such engagement, or to prevent a prosecution, and, upon the authority of many cases, a confession thus made could not be excluded. But we do not propose to discuss that position. On the next day the agent and Wentworth went into an attorney's office, and while there Wentworth admitted that he knew who placed the rail upon the track near the gas-house, and stated that it was Stone. The promise on the day before was, that if Wentworth would produce Hasty, and satisfy the agent that he, Wentworth, was not on or about the track, he should not be prosecuted — the favor was to depend upon the production of Hasty, and the proof that Wentworth was not in the

vicinity of the track. The admission on the following day was that Stone put the rail on the track. This was not the production of Hasty, nor evidence that he, Wentworth, was not on or about the track; but, so far as it showed any thing, it was an admission that he was himself near the track. The· inducement held out by the agent was not to make any such statement as that, but the contrary; and when we put together the two, and consider that they took place on different days, it does not appear that the admission was made in consequence of the inducement, but must have been in connection with other matters stated in the office at the time the admission was made, and which, being immaterial for the decision of the case, are not stated.

This embraces the several exceptions to the verdict, and they must all be overruled.

A number of questions are presented upon the motion in arrest of judgment, but those particularly relied upon are the following :

1. That the indictment does not appear to have been found at a trial term of this court. This was not necessary to be stated. The trial terms and law terms are both terms of the Supreme Judicial Court, and it is sufficient to aver in the indictment that it was found at a term of the Supreme Judicial Court. This question was settled in Carroll county, in the case of *State* v. *Gary & als.*, 36 N. H. 359, and it was there held that the allegation that the indictment was found at a particular term of the Supreme Judicial Court, was not defective or imperfect, inasmuch as the terms of the court are fixed by public law; and that where the time is stated, with the time and place of holding the court, it is sufficiently stated, and sufficiently appears with reasonable certainty, whether the indictment was found at a trial or law term of the court.

2. That the indictment does not allege that the offence was committed in this State. The objection is not that the town and county are not set forth, but that the State

State *v.* Wentworth and Stone.

is omitted. The indictment is in the usual form in this respect, commencing, "State of New-Hampshire." The necessity of stating, in an indictment, the place where an offence was committed, is to give the prisoner the proper information, and to show that the court assuming to try him have jurisdiction of such offences committed in the place alleged. *State* v. *Cotton*, 24 N. H. (4 Foster) 143. And if the town and county are distinctly averred, that is abundantly sufficient for both purposes.

3. That the indictment does not allege that the Boston and Maine Railroad was a corporation, or carrier, or a way, or road used for travel. This objection was substantially considered in examining the second exception to the verdict. It was not necessary to state that the railroad was a corporation, or carrier, &c. Obstructions maliciously placed upon a railroad, whether a corporation or not, whether public or private property, by which the life of any person may be endangered, is an indictable offence under the statute. The indictment avers that these obstructions were maliciously placed upon the track of the Boston and Maine Railroad, whereby the lives of twenty persons, riding in the cars upon said railroad, were greatly endangered, and that averment was sufficient.

4. That the indictment does not properly allege the obstructions with time and place. The allegation is substantially that the obstructions were placed upon the road on the 4th day of March, 1857, at Somersworth, in the county aforesaid—the county having been previously stated in the margin of the indictment — and this was sufficient. Arch. Cr. Pl. 17 ; 3 P. Wms. 439 ; *State* v. *Cotton*, 24 N. H. (4 Foster) 143.

5. That the indictment does not set out the name of any person whose life was endangered.

In framing indictments for offences created by statutes, it is in general sufficient to state the offence in the words of the statute, with the particular facts constituting the

crime, or to. set forth substantially all the material matters embraced in the statute going to make up the offence; and if the defendant insists upon the insufficiency of such an indictment, it devolves upon him to show that, from the obvious intention of the legislature, or the known principles of law, the case falls within some exception to such general rule. Whar. Cr. Law 91; *State* v. *Abbott*, 31 N. H. (11 Foster) 434. The words of this statute are, "whereby the life of any person may be endangered;" the words of the indictment are, "whereby the lives of sundry persons, to wit, twenty persons, riding in said cars upon said railroad, were greatly endangered." This exception to the indictment is not taken till after trial and a verdict of guilty, and unless the court see that the indictment is essentially defective in this respect, the exception cannot prevail. If it was insisted upon at the trial that the names of the persons whose lives were endangered should be made known to the prisoners, and that the information was necessary to their defence, we have a right to presume that the information was given, and that the names were shown in evidence, otherwise the exception would appear in the case. If, then, the indictment would have been bad, in this respect, on special demurrer, it would be sufficient after verdict.

But we think this averment is well enough, in itself considered. The particular gist of the offence consists in maliciously placing the obstructions upon the road; and if a prisoner is sufficiently informed of this fact, it is not necessary for his defence, or for a proper understanding by the court of the crime charged, that the names of the persons riding in the cars, whose lives were endangered, should be set forth. It would oftentimes be impracticable to state them, beyond the names of the employees of the corporation at the time upon the cars, for it is a matter of public notoriety that the passengers do not give their names, and, unless actually injured, leave the cars at once on arriving at the place of destination.

The case of *State* v. *Prescott*, 33 N. H. 212, is to some extent an authority upon this point. That was an indictment on the statute for keeping a gaming-house. The provision is, that if any person shall keep any gaming-house or place, and shall suffer any person to play at cards, &c. The indictment charged that the defendant did keep a certain gaming-house, and suffer many idle and dissolute persons therein to play at games, &c., and it was held that it was not necessary to set forth the names of the persons who played in the house, the offence consisting in keeping a gaming-house.

The other objections taken to the indictment are not insisted upon in the argument, and upon examination do not appear to be doubtful. They are overruled. And the result to which we have arrived is, that there must be

*Judgment on the verdict.*